(99 App. Div. 323.)

## FRANKLIN et al. v. JUDSON.

(Supreme Court, Appellate Division, First Department. December 16, 1904.)

1. SUPPLEMENTARY PROCEEDINGS—INSPECTION OF BOOKS—SCOPE OF INQUIRY.

Where the court has determined in supplementary proceedings that plaintiff is not entitled to an inspection of defendant's books, and defendant is subpœnaed to produce his books only so that he can, by reference to them, answer questions pertinent to the inquiry, defendant cannot be compelled to answer a question which requires him to give the entries in a book under specified dates.

Appeal from Special Term, New York County.

Action by William B. Franklin and others against Cyrus Field Judson. From an order adjudging defendant, as a witness, in contempt of court for refusing to answer a question, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

William N. Cohen, for appellant.
Edmund L. Mooney, for respondents.

HATCH, J. A brief history of the proceedings which have been had in connection with the present proceeding is essential to an understanding of the question presented by this appeal. The plaintiffs herein brought an action to recover a considerable sum of money, in which the appellant (the judgment debtor herein), Judson, John R. Drexel, and Joseph Leiter were named as defendants. Therein an order was obtained for the examination of the appellant before trial to enable the plaintiffs to properly frame a complaint. Under that order the plaintiffs sought to compel the appellant to produce his books for examination, but the application was denied. Thereafter the plaintiffs brought an action against the defendant, Judson, and obtained a judgment against him by default for $7,512.-08. Execution was issued thereon and returned wholly unsatisfied, and thereupon proceedings supplementary to execution were instituted upon that judgment. Therein the appellant was served with a subpœna duces tecum to appear before a justice of the Supreme Court to be examined as a witness in the last-named proceeding. Thereupon the appellant moved to vacate the subpœna, which motion was denied at the Special Term. An appeal was taken from the order entered thereon to this court, and resulted in the affirmance of the order. The opinion delivered in deciding the motion was written by Presiding Justice Van Brunt, and was concurred in by all of the other members of the court. 96 App. Div. 607, 88 N. Y. Supp. 904. Therein the court said:

"This appeal seems to proceed upon the theory that the subpœna requires the appellant [the witness] to produce his books and papers for the plaintiffs' inspection. The subpœna does not so read, nor is such its office. The appellant can be subpœnaed to produce his books only so that he can, by reference to them, answer questions pertinent to the inquiry being conducted before the court. It gives no right whatever to the inspection of the books

by plaintiffs' counsel. It is claimed that the books are to be used for the purpose of getting evidence in respect to other litigations, and not for any other purpose connected with the examination before the court. The court before which the examination is pending will see that it is limited to the subjects germane to the investigation being carried on, and we cannot say that the court will not perform its duty in this respect. Indeed, we believe that it will, and that the examination will be conducted solely with a view to a discovery of property of the defendant, and not for discovery of evidence relating to another controversy. The rights of the witness can, and undoubtedly will, be completely protected by the court below."

After this decision the witness appeared before the court in obedience to the subpœna and produced his books. The course of the investigation sought to disclose the existence of a combination or pool entered into between the appellant with Judson and others for the purpose of controlling the market price of International Power Company stock. By reason of such arrangement it was claimed that Judson had acquired rights of much value, and the particular proceedings of this combination were sought to be developed by the examination of the witness. The books having been produced, the attention of the witness was directed to the account therein concerning the transaction, and repeated questions concerning the knowledge of the witness with respect thereto were asked; and in almost every instance the witness testified that he knew nothing about the entries, that he was unable to state the particulars concerning them, and that they did not in any respect refresh his recollection so that he was able to give the details of the transaction to which the entries related. He excused himself from his liability to answer in this respect by stating that the entries were not made by him, nor under his direction, but by a bookkeeper under the direction of other persons. The course of the examination clearly disclosed one of two conditions—either that the witness willfully refused to recollect the particulars of the transaction, or that he was unable to refresh his memory from anything which appeared in the books. Counsel for the plaintiffs asked the witness to read the entries in the books, and the witness refused for the reason that he was not commanded by the subpœna so to do. The court was evidently impressed with the view that the witness was not acting in good faith in his denial of recollection of the particulars of the transaction, and of his inability to refresh his recollection from the books. In passing upon the question of the refusal of the witness to answer the question and read from the books, the court said:

"In view of his avowed ignorance of these matters, I think I shall require him to state the amount of the items. I propose to give Mr. Mooney whatever information the book may impart, as long as the witness is unable to furnish any additional information."

Thereupon the examination proceeded, and the witness read from the books quite a large number of items. After proceeding for some time along this line, counsel for the plaintiffs asked the following question:

"Q. State whether you find under the dates of October or November, 1900, an item of 1,700 shares put up by you in one lot, or in a number of lots, in connection with this pool?"

Appellant's counsel objected to the question as not within the scope of the examination, as calling for the contents of a book which under this proceeding the judgment creditors had no right to ask for or to obtain, and that the question called for an inspection of the contents of the books. The witness refused to answer, and the court for such refusal adjudged the witness to be in contempt, and made the order from which this appeal is taken.

The decision of this court upon the former appeal stated the particular office of the subpœna, and in clear terms announced that it gave no right to the inspection of the books by the plaintiffs' counsel upon the examination. It is evident that the ruling of the court in directing the witness to give the items appearing in the book, and the question which the witness refused to answer, and for which he has been adjudged to be in contempt, exceeded the limitation placed by this court upon the plaintiffs' rights. It gave to the plaintiffs, for all practical purposes, an inspection of the books. There is no practical difference between the physical possession and inspection of the contents of the books, and compelling the witness to read the items contained therein. Such an examination, when finished, would have displayed in the record, not the recollection of the witness, but the contents of the books, and such right had been denied to the plaintiffs by two decisions of this court—first, upon the application to examine the appellant in order to frame the complaint; and, second, upon the motion to vacate the subpœna. Whatever may be plaintiffs' right to procure an inspection of these books upon a proper application, it is settled by the adjudication of this court that they cannot have such inspection upon the examination in this proceeding, and the sole purpose of this question was directed to obtaining the contents of the books. It was therefore clearly improper. It is no answer to say that the witness was guilty of bad faith and falsified when he stated that he had no recollection of what the entries meant, that his memory was not refreshed thereby, and that he could give none of the particulars of the transaction to which they related. Assuming all that the plaintiffs claim in this respect, it conferred no authority to obtain an inspection of the books. If the witness has testified falsely, the plaintiffs must seek redress through other channels. Wayland v. Tysen, 45 N. Y. 281, 285. Whether the answers of the witness be true or false is not a matter which can control in the disposition of the question presented by this appeal. That is to be determined solely upon a consideration of the legal rights of the parties, and, as we have seen, the plaintiffs were not entitled to examine the witness, and thereby obtain an inspection of the books, as such right had already been denied in plain and precise terms.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the motion to punish for contempt denied. All concur.