PEOPLE ex rel. ROACHE v. HANBURY.

(Supreme Court, Special Term, Kings County. December 23, 1913.)

1. WITNESSES (§ 21*)—REFUSAL TO ANSWER—"CONTEMPT."

Since the object of testimony is to establish facts judicially, and the refusal of a witness to answer pertinent questions may result in a suppression of the truth, such refusal is a "contempt" of court, both under the direct provisions of Judiciary Law (Consol. Laws, c. 30) § 750, subd. 5, as well as independent of statute; the right to punish for contempt in such cases being inherent in the superior courts.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 37–41; Dec. Dig. § 21.*

For other definitions, see Words and Phrases, vol. 2, pp. 1489–1492; vol. 8, p. 7614.]

2. WITNESSES (§ 21*) — CONTEMPT—REFUSAL TO ANSWER — MATERIALITY OF QUESTIONS.

The refusal of a witness to answer questions is a contempt of court only when the questions are pertinent to the issues; Code Civ. Proc. § 856, authorizing the commitment of a witness for refusing to answer legal and pertinent questions.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 37–41; Dec. Dig. § 21.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. EXECUTION (§ 397\*)—SUPPLEMENTARY PROCEEDINGS—EXAMINATION.
   The examination in supplementary proceedings is given a wide range both as to the parties and witnesses.
   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1137, 1149; Dec. Dig. § 397.\*]

4. EXECUTION (§ 417\*)—SUPPLEMENTARY PROCEEDINGS—CONTEMPT BY WITNESS —MATERIALITY OF QUESTIONS.
   The questions, for refusal to answer which in supplementary proceedings a witness was found guilty of contempt of court, related to a check drawn by a trust company upon a bank to the order of a certain woman, and indorsed in blank by her and the accused, and also bearing the payment stamps of the bank and the trust company, and it was claimed that the woman was merely a dummy for the judgment debtor, and that the check represented the proceeds of stock which really belonged to the debtor, and had been held as security for a loan by the trust company. It appeared that the check was produced by the drawee bank and its condition indicated that it had been paid in cash by the trust company to the payee or to the accused witness as indorsee before it was sent to the drawee, and the questions to the accused witness required him to disclose the facts about the check and as to why he indorsed it. Held, that the questions were pertinent, so that the witness was guilty of contempt of court by his persistent refusal to answer.
   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1197–1200; Dec. Dig. § 417.\*]

5. EXECUTION (§ 417\*)—SUPPLEMENTARY PROCEEDINGS—CONTEMPT BY WITNESS —REFUSAL TO ANSWER QUESTIONS.
   A witness in supplementary proceedings was guilty of contempt of court for refusal to answer a question, whether he was specifically instructed by the judge to answer every one of the questions or not, since the entire examination is theoretically coram judice, whether each question is passed upon by the justice or not.
   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1197–1200; Dec. Dig. § 417.\*]

6. EXECUTION (§ 417\*) — SUPPLEMENTARY PROCEEDINGS — CONTEMPT BY WITNESS.
   A witness in supplementary proceedings was sufficiently directed by the judge to answer pertinent questions asked so as to make him guilty of contempt of court by refusing to answer, where the judge said, "I instruct" the witness "to disclose the facts about this check."
   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1197–1200; Dec. Dig. § 417.\*]

7. EXECUTION (§ 417\*)—SUPPLEMENTARY PROCEEDINGS—CONTEMPT BY WITNESS —REFUSAL TO ANSWER.
   A witness was guilty of contempt of court where he was repeatedly asked if he would answer certain questions in supplementary proceedings, and stated that he declined to answer because he thought the court was in error in requiring him to answer such questions, and persistently adhered to that attitude.
   [Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1197–1200; Dec. Dig. § 417.\*]

Contempt proceedings by the People of the State of New York, on the relation of J. Benedict Roache, against Harry A. Hanbury. Judgment of conviction as stated.

Charles L. Craig, of New York City, for relator.
George W. Sickels, of New York City, for accused.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BENEDICT, J. This is a special proceeding instituted by a warrant of attachment issued under section 762 of the Judiciary Law (Consol. Laws, c. 30), to punish the accused, Harry A. Hanbury, as for a contempt of court by reason of his refusal to obey oral directions given directly to him as a witness in supplementary proceedings by Mr. Justice Manning, the judge before whom the proceedings were then pending. Upon the return of the warrant at the Special Term for Contested Motions Mr. Justice Maddox, the justice then presiding, caused interrogatories to be filed, and the accused made written answers thereto, and, the matter having been duly adjourned, it now comes before the court upon the original affidavits, answers, and subsequent proofs, from which the court "must determine whether the accused has committed the offense charged." Section 769, Judiciary Law.

[1] The time at my disposal will not permit, nor does the occasion require, a lengthy review of the history of the law governing the particular form of contempt of court which is presented by this application. Suffice it to say that the object of evidence and of testimony is to establish facts judicially so that from established facts the truth may be made manifest; and, since the refusal of a witness to answer questions properly requiring a reply may result in a suppression or distortion of the truth and thereby defeat justice, such refusal has, from time immemorial, been regarded as a contempt of court. It is provided in express terms by our statutes, in section 750 of the Judiciary Law, that:

"A court of record has power to punish for a criminal contempt, a person guilty of either of the following acts, and no others. * * *

"5. Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory."

But it is a well-established proposition that the right to punish is inherent in the superior courts, and is not merely a right created by legislative enactment. The ground upon which this right of punishment rests is not, as many unthinkingly suppose, because it will tend to prevent a display of the witness's contempt, disdain or scorn for the court or judge, but because, unless it be recognized, the ends of justice may easily be defeated by the capricious or corrupt refusal of a witness to testify when properly required so to do.

The principle is made very clear by Judge Platt, speaking for the majority of the Court of Errors in Yates v. Lansing, 9 Johns. 395, 416 (6 Am. Dec. 290) when he says:

"The right of punishing for contempts by summary conviction is inherent in all courts of justice and legislative assemblies, and is essential for their protection and existence. It is a branch of the common law adopted and sanctioned by our state constitution. The discretion involved in' this power is, in a great measure, arbitrary and undefinable, and yet the experience of ages has demonstrated, that it is perfectly compatible with civil liberty, and auxiliary to the purest ends of justice. The known existence of such a power prevents, in a thousand instances, the necessity of exerting it; and its obvious liability to abuse is perhaps a strong reason why it is so seldom abused."

I am not unmindful that in the century which has elapsed since these words were uttered, and more especially within its latest decade, there has come over the people of our country—whether as a result of dem-

agogic misleading or of a growing impatience of all forms of authority and restraint, either civil or religious, or of an impression that the courts at times have failed to deal out even-handed justice, or of all these combined—a marked change in their mental attitude towards the courts, which is manifested by the inclination to treat the courts and their decisions with but slight respect. But if our courts of justice are to continue to serve any useful purpose for the benefit of the people who have established them in order to protect and preserve right and punish wrong, to settle disputes without resort to force, and to restrain the tyranny of autocratic power or of mob rule, they must retain and exercise those powers and prerogatives inherent and necessary to enable them to pronounce just and independent judgments; otherwise they would cease to have any reason for existence.

In the present case the facts are briefly these: One Patrick H. Flynn, against whom a judgment had been recovered for a considerable sum of money, was being examined as a judgment debtor in proceedings in this court, wherein the present relator was the judgment creditor, and such proceedings had been duly adjourned from time to time. In the course of the proceedings various witnesses had been sworn and had given testimony. Upon the 26th day of November, 1912, the accused, the respondent herein, was sworn as a witness in said proceedings, and was thereafter examined and his examination suspended. Subsequently, on the 29th day of October, 1913, a subpœna was duly issued and served upon him, requiring him to appear for examination as a witness before Honorable David F. Manning, one of the justices of this court, and upon the return of said subpœna on the same day the respondent was called as a witness, and certain questions were asked of him which he declined to answer. Thereupon the witness was instructed by the justice presiding to answer certain questions, but he persisted in declining to answer, although warned by the justice that if he refused to answer he would be committed for not answering. He still declined to answer, however, stating that in his opinion the court was in error in instructing him to answer. Thereupon this present proceeding to punish him for contempt was begun and the various steps taken herein which have already been recited.

The accused in his sworn answers to the interrogatories put to him in this present proceeding either admits that he declined to answer the question put to him upon his examination as a witness, or else says that he has no recollection of the question; and, since he does not interpose any denial as to his refusal to answer, the court is warranted in assuming the record to be correct. He did not when under examination, nor does he now, place his refusal to testify upon the ground of personal privilege in that his answers might tend to incriminate or degrade him. He did not then, nor does he now, contend nor even suggest that there is any vice or infirmity in the supplementary proceedings whereby the court failed to obtain or ceased to possess jurisdiction over him. Nevertheless, as the proceeding to punish for contempt is in its character criminal, the court has been at some pains to examine the record to see whether all the rights of the accused have been safeguarded, and is satisfied that they have been. So in reality

there is only a single question to be determined here, which is, Was the accused justified in refusing to answer the questions which the justice presiding in the proceedings in which he was a witness directed him to answer? His counsel contends that he was justified on the ground that the questions asked were not legal and pertinent questions, which is the same ground taken by the witness while under examination and by the counsel then with him representing the judgment debtor.

[2] It is well-settled law, at least in this state, that the refusal of a witness to answer questions in examination before the court is contempt only when the questions propounded are pertinent to the issues. People v. Marston, 18 Abb. Prac. 257, 259; Clark v. Brooks, 26 How. Prac. 254; Matter of Leich, 31 Misc. Rep. 671, 65 N. Y. Supp. 3; Matter of Odell, 19 N. Y. St. Rep. 259; Matter of Hackley, 24 N. Y. 77; Franklin v. Judson, 99 App. Div. 323, 326, 91 N. Y. Supp. 100; Matter of Board of Aldermen, 68 Misc. Rep. 478, 483, 124 N. Y. Supp. 70; Matter of Investigation, etc., 74 Misc. Rep. 170, 178, 132 N. Y. Supp. 908. By section 856 of the Code of Civil Procedure it is provided in part as follows:

"If the person subpœnaed and attending * * * refuses without reasonable cause to be examined, or to answer a legal and pertinent question, * * * then any judge of such court may upon proof by affidavit of the facts by warrant commit the offender to jail, there to remain, until he submits to do the act which he was required to do or is discharged according to law."

And this provision merely codifies the existing law regarding pertinency. If the questions put to the witness are legal and pertinent, however, he is not excused from answering them on the ground that his examination will tend to convict him of the commission of a fraud. Section 2460 of the Code provides in regard to supplementary proceedings as follows:

"No person excused from answering on the ground of fraud.

"A party or a witness, examined in a special proceeding, authorized by this article, is not excused from answering a question, on the ground that his examination will tend to convict him of the commission of a fraud; or to prove that he has been a party or privy to, or knowing of, a conveyance, assignment, transfer, or other disposition of property for any purpose; or that he or another person claims to be entitled, as against the judgment creditor, or a receiver appointed or to be appointed in the special proceeding, to hold property, derived from or through the judgment debtor, or to be discharged from the payment of a debt which was due to the judgment debtor, or to a person in his behalf. But an answer cannot be used, as evidence against the person so answering in a criminal action or criminal proceeding."

Loomis v. People, 19 Hun, 601, held as to the last sentence of the section that a conviction based upon answers given in a supplementary examination could not stand as the evidence was not voluntary, "the law required him to 'answer.'"

[3] "Supplementary proceedings are eminently inquisitorial; they were meant to be so by the Legislature. The examination is therefore allowed to take a wide and searching range, both as to the parties to the proceedings and to the witnesses." See note by Mr. Daniel S. Riddle to Perkins v. Kendall, 3 Civ. Proc. R. 240, at p. 247, citing cases.

In Matter of Sickle, 52 Hun, 527, 530, 5 N. Y. Supp. 703, 705, Mr. Justice Bartlett held that a judgment creditor does not lose or waive his right to examine the assignee of a judgment debtor in proceedings supplementary to execution by bringing an action to have the assignment set aside. He says:

"But this is not such an action. It is simply a supplementary inquiry conducted for the sole purpose of ascertaining whether the judgment debtor has any property lawfully applicable to the payment of the judgment against him. The witness is properly examined concerning matters pertinent to such inquiry; and the fact that what he says may be useful in another litigation does not deprive the judge of jurisdiction to examine him. In such a proceeding the fact that the questions asked of a judgment debtor, or of a witness, tend to show that the judgment debtor has made a fraudulent assignment is no valid reason why such questions should not be answered. Lathrop v. Clapp, 40 N. Y. 328, 100 Am. Dec. 493."

In the matter of First National Bank v. Gow, 139 App. Div. 582, 124 N. Y. Supp. 454, it was held that a judgment creditor in supplementary proceedings may examine a witness to the fullest extent concerning property of the debtor held by him, although he claims adverse title. Justice Laughlin says:

"An exhaustive examination is authorized to enable the judgment creditor to determine whether or not it is safe to levy on any property in the possession of the witness as property of the judgment debtor in disregard of an assignment or transfer thereof claimed to have been fraudulently made or otherwise to be invalid, or whether it is advisable to apply for the appointment of a receiver to maintain an action to recover the property or to set aside a transfer thereof."

See, also, Murphy v. Cram, 142 N. Y. Supp. 972, 978, recently decided by the Appellate Division in the First Department, which holds that the right of examination is not lost by the appointment of a receiver, but may be used to discover property of the judgment debtor which belonged to him at the time of the institution of the supplementary proceeding, or which, having been subsequently acquired, is subjected to the receivership by order extending the receivership so as to include such property.

In the light of these cases, little more need be said, except to state briefly that in the judgment of this court the questions which the witness Hanbury refused to answer were both legal and pertinent to the inquiry and should have been answered by him.

[4] The questions which the witness Hanbury refused to answer related to a check for $24,037.96 drawn by the Hamilton Trust Company upon the Manhattan Company to the order of one Helena I. Meht, and indorsed in blank by Helena I. Meht and the accused, Harry A. Hanbury, and bearing also the payment stamps of the Manhattan Company and the Hamilton Trust Company.

It is claimed that Mrs. Meht was a dummy for Flynn in numerous transactions, and that this check represented proceeds of stock which really belonged to Flynn, and which had been held as security for loans by the Hamilton Trust Company. It appears from the testimony that the relations of Flynn and Mrs. Meht were such, not only in general, but also with respect to this particular transaction, as to make it at least

a fair subject of inquiry in these proceedings whether the sum represented by the check was the property of Mrs. Meht or of Flynn. Accordingly I think that the questions were pertinent, and that there was no legal excuse for not answering them. It is a circumstance of some significance that the check was produced by the Manhattan Company, the drawee (Sten. Min. pp. 1602 et seq.), and that its condition fairly indicated that it had been paid in cash by the drawer, the Hamilton Trust Company, to the payee or to the accused as indorsee before it was sent to the drawee. The inferences to be drawn from this cir-, cumstance do not benefit the accused.

There remains to be noticed but one further point which is touched upon in the respondent's brief, viz., that the accused was not instructed by Mr. Justice Manning to answer every one of the questions propounded by counsel. Assuming this to be the fact, although the stenographic report of the examination would indicate otherwise, it does not avail the accused, and this for several reasons.

[5] First. The entire examination is in contemplation of law coram judice,` whether each question is passed upon by the justice or not. Clarke v. Brooks, 26 How. Prac. 254.

[6] Secondly. The instructions of the justice were given clearly and comprehensively to the witness in these, words: "I instruct Mr. Hanbury to disclose the facts about this check;" and, notwithstanding this direction the witness still persisted in his refusal to answer questions tending to disclose the facts about the check.

Thirdly. The witness perfectly well understood that the court had directed him to answer the questions which he declined to answer, because he placed his refusal to answer not upon the ground that the court had not said he should answer, but distinctly on the ground that the court was in error in directing him to answer the questions, and that the questions themselves were improper, or, as he said in the one instance:

"It is Mrs. Meht's private affairs, and the court is in error, in my opinion, and I must decline to answer."

Here it is evident that the witness fully appreciated his position and the effect of his refusal, and recognized that he was defying the court and not merely the counsel. Moreover, as showing that the refusal of the witness was deliberate and persistent, it appears that after very many refusals to answer the following colloquy took place:

"Mr. Craig: The witness Hanbury has declined to answer the questions in spite of your honor's ruling, and puts his refusal on the ground that he thinks your honor is in error. I think I ought to submit it to you so that we may get some speedy relief.

"Mr. Justice Manning: The only relief I can give is to order Mr. Hanbury to answer these questions, and if he refuses to answer them I will commit him for not answering.

"Mr. Craig: Will you direct that Mr. Hanbury must not make any disposition of this property?

"Mr. Justice Manning: I will tell him now that he must make no disposition of that property until this matter is settled. If he disobeys the order (it is not my order, but the order of the Supreme Court), just submit your order.

"Mr. Van Thun: No order will be disobeyed with my sanction."

Thereupon a recess was had, after which the following occurred:

"By Mr. Craig: Q. Do you still adhere to your refusal to answer any of this line of questions? A. Ask me whatever you desire, and I will give my answer.

"Q. For what purpose did you place your indorsement upon that check for $24,037.96? A. I decline to answer.

"Q. Will you answer any of the questions which you previously refused to answer? A. I have answered every one of those questions and reanswered them and given my reasons for such as I decline to answer.

"Q. You won't answer any questions you declined to answer? A. Those that I declined I don't propose to answer now, for the same reasons I have given."

[7] From these quotations the attitude of the witness is made plain. He sets his own judgment against the judicial determination of the court, and he persisted, in defiance of the ruling of the court, in disobeying the directions given to him orally by the court to answer legal and pertinent questions. Having taken this position deliberately and maintained it after opportunity for reflection, he must suffer the consequences which his own recalcitrancy has invited, namely, punishment for his criminal contempt of this court.

Upon the original affidavits, the answers and subsequent proofs, the court, therefore, determines that the accused, Harry A. Hanbury, has committed the offense charged, namely, the contumacious and unlawful refusal, after being sworn as a witness in supplementary proceedings then pending, to answer proper and legal interrogatories, and further determines that for such contempt the accused, Harry A. Hanbury, be punished both by a fine of $250 and by imprisonment in the jail of the county of Kings for 30 days; and, if he shall fail to pay such fine, that he be committed to the said jail for such nonpayment for the period during which such nonpayment shall continue, but not for more than 30 days, to be computed from the expiration of the definite sentence of imprisonment first above specified.

Settle order on notice.