(31 Misc. Rep. 671.)

## In re LEICH et al.

(Supreme Court, Special Term, Kings County.   June, 1900.)

1. CITY OFFICIALS—ACTS—SUMMARY EXAMINATION—CONSTITUTIONAL LAW.
   New York Charter, § 1534, providing that on affidavit of five taxpayers, or of five members of the municipal assembly, or of the mayor, or of the comptroller, or of a commissioner of docks, alleging misconduct of any city official, a justice of the supreme court may order an examination before him of officials ·touching such matters, is not unconstitutional, as conferring on justices of the supreme court a nonjudicial power.

2. SAME—WITNESSES—INCRIMINATING SELF—EXAMINATION.
   New York Charter, § 1534, providing that, on affidavit alleging misconduct of any city official, a justice of the supreme court may order an examination touching such matters, and that the answers of a witness shall not be used against him in any criminal proceeding, is not unconstitutional, as compelling witnesses to give evidence which would tend to convict them of criminal offenses, without providing full immunity, as such witnesses cannot be compelled under the act to testify against themselves in respect to a criminal offense.

3. SAME—REFUSAL TO ANSWER—PUNISHMENT FOR CONTEMPT.
   The provision of the act empowering a judge to punish for refusal to answer applies only to questions which a witness may be lawfully required to answer.

4. SAME—ADMINISTERING OATH.
   The claim of privilege of a witness against incriminating himself does not exempt city officials from being sworn, on the ground that the investigation is to show such officials guilty of criminal offenses, its scope being broad enough to permit the officials to be examined as to particulars which could not tend to incriminate them; and the privilege should be asserted during the examination.

Motion to vacate an order for the examination of the mayor, the commissioner of docks, and others, made by Mr. Justice GAYNOR, under New York Charter, § 1534.   Motion denied.

Charles J. Patterson, Samuel Untermeyer, De Lancey Nicoll, and John L. Cadwallader, for the motion.

Wheeler H. Peckham and J. Noble Hayes, opposed.

GAYNOR, J.   This statute (section 1534, New York Charter) was passed to help the rentpayers and taxpayers of the city to keep watch of the conduct of their officials, and in the hope of enabling them by publicity to prevent official betrayals of trust which had come to be so persistent and common, and were so low, base, vulgar and heartless as to make many believe that we had reached an era when the permanent decay of our civilization had set in.   This purpose and ·origin of the statute needs to be recalled in order to show the light and favor in which it should be interpreted.   It should not be narrowed in its scope; nor should it be held void unless upon grounds leaving no other course. If it be said that it enables the citizen to be meddlesome, the answer is that purity and integrity in government can be obtained and preserved only by the wholesome vigilance and meddlesomeness of the citizen.

The section of the city charter in question (section 1534) is (like most of the charter) very verbose and bungling; but its precise substance here applicable is that upon affidavit of any five citizens who are tax-

payers, or of any five members of the municipal assembly, or of the mayor, or of the comptroller, or of a commissioner of accounts, alleging any delinquency or violation of law by any city official in the discharge or neglect of his duty, a justice of the supreme court may order the examination before him of any officials of the city, or other persons, touching such official delinquency or violation of law.

The research, learning and closeness of argument devoted to this case at the bar would reflect credit on any bar. In deciding it I can do little more than state formal conclusions. The constitutional grounds on which this statute is now claimed to be void are two.

1. It is said that it confers on justices of the supreme court a non-judicial power or function. That it was lawful for the legislature to provide for such an investigation cannot be denied. It is then difficult to see why the legislature could not make it a judicial investigation, surrounded with all the safeguards to individual right which are part and parcel of judicial procedure, and put it in the hands of the judiciary. It is said that the investigation cannot be a judicial function because no judgment is to be given in the matter by the judge who conducts it. This is equally true of the taking of depositions by our judges to be used in actions pending in the courts of other states or foreign countries, to mention no other instance. It is also true of the investigation provided for by the act to prevent monopolies passed in 1897 (Laws 1897, c. 383), which has been held to be in that respect constitutional. In re Attorney General, 22 App. Div. 285, 47 N. Y. Supp. 883. The taking of the evidence, with the rulings upon questions of admissibility, and upon the privilege of witnesses to refuse to answer, and the compelling of witnesses to answer, is judicial in its nature. This is sufficient to classify an investigation like this as judicial and appropriate to the judicial department of government. To rule otherwise would seem to me to be straining constitutional interpretation to an extent not dreamed of by the founders of our system of government; an accusation which many think our courts have already laid themselves justly open to. Nor is the investigation without a judicial object, which might make it obnoxious to some decisions. One of its main purposes is to bring out facts which may serve as foundation for a taxpayer's suit to prevent the spoliation of the city's funds or property, or, if that be too late, to compel restitution.

2. It is also claimed that this statute is unconstitutional and void because it compels witnesses to give evidence which would tend to convict them of criminal offenses, without providing for a full immunity to them against prosecution for such offenses. It provides that the answers of a witness "shall not be used against him in any criminal proceeding." Prior to its passage it had been decided by our highest court that this degree of immunity was sufficient to do away with the constitutional privilege of a witness not to testify against himself, and to enable a court or judge to require him to so testify. This decision was given under a statute containing precisely the same words in this respect as does the present statute, which seems to have been drawn to conform to such decision. People v. Kelly, 24 N. Y. 74. If this decision were still the law I should have to require the witnesses in this proceeding to testify to matters that would incriminate them,

if such a contingency should arise. But in the recent case of Counsel-man v. Hitchcock, it was held by the supreme court of the United States (142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110) that the mere immunity to a witness of not having his testimony used against him in a criminal prosecution was not sufficient to deprive him of his constitutional privilege of refusing to incriminate himself, but that nothing short of full immunity against future prosecution for any criminal offense which his testimony tended to disclose would suffice; and the still later case in this state of People v. Forbes, 143 N. Y. 219, 38 N. E. 303, fully adopts this decision. It follows that witnesses examined under this present statute cannot be compelled to witness against themselves in respect of a criminal offense. If any part of it had to be construed to the contrary, that part only would be void. In re Kenny, 23 Misc. Rep. 14, 49 N. Y. Supp. 1037. The part which empowers the judge to punish witnesses for refusal to answer does not apply to questions which a witness may refuse to answer under his said constitutional privilege, but only to questions which he may be lawfully required to answer. This interpretation of the statute makes it constitutional.

It is also urged that if this statute be valid the city officials who have been ordered to be examined as witnesses in this proceeding should not be sworn as such at all, but that their claim of privilege against incriminating themselves should be allowed in advance, and exempt them from being sworn, for the reason that the object of the proceeding as disclosed by the affidavit on which it has been instituted, is to show such officials to be guilty of criminal offenses, and that therefore they could be asked nothing that would not tend to incriminate them. It is sufficient to say that the scope of the investigation is wide enough to enable these officials to be examined in particulars which could not tend to incriminate them. When this is the case the witness has to be sworn, and is left to assert his privilege if it should be infringed upon during his examination. Skinner v. Steele, 88 Hun, 307, 34 N. Y. Supp. 748. The mayor, for instance, might be able to testify to some fact in relation to the official action of the commissioners of docks.

The motion to vacate the order is denied, and the testimony will be taken at 10 o'clock in the forenoon on next Saturday, June 9, 1900, at the place of the last hearing.     •