In the Matter of the Application of JOHN PURROY MITCHEL, Mayor of the City of New York, Petitioner, for a Writ of Prohibition against the Honorable JAMES C. CROPSEY, a Justice of the Supreme Court of the State of New York, and Others, Defendants.

In the Matter of WILLIAM H. CONLEY and Others, for the Examination of JOHN PURROY MITCHEL, Mayor of the City of New York, and Other City Officials, and IRA A. PLACE, Vice-President of the New York Central Railroad Company, in Pursuance of Section 1534 of the Charter of the City of New York.

Second Department, April 3, 1917.

**Municipal corporations — city of New York — examination of municipal officers under section 1534 of the city charter — statute construed — constitutional law — section not unconstitutional — duties which may be imposed upon judicial department of government — procedure — requirements of moving affidavit — examination relating to proposed contract for abolition of grade crossing, etc. — when examination under section 1534 of charter unauthorized — examination of mayor unauthorized — equitable suit for injunction pending — writ of prohibition — remedy by motion to vacate order — power of Appellate Division to entertain motion — constitutional powers of court — Legislature cannot curtail judicial power by Code amendments.**

Section 1534 of the charter of the city of New York which authorizes a justice of the Supreme Court in the First or Second Judicial Department to order a summary public examination of certain public officers and

heads of departments of said city as to any alleged wrongful diversion or misapplication of moneys, etc., or as to any delinquency charged by affidavit touching said officers, or as to the discharge or neglect of duty, and also conferring upon said justices the power to punish witnesses as for a contempt of court, is not unconstitutional on the theory that it imposes non-judicial functions upon a judicial branch of the State government.

While said section, which is designed to elicit testimony regarding alleged wrongful acts of city officers for the purposes of publicity and for the information of a city department, does not involve a judicial proceeding in the sense that it results in a judicial determination, it does, nevertheless, involve duties which may be properly delegated to judicial officers by reason of their peculiar knowledge and skill resulting from judicial experience, and hence said act does not violate either the letter or spirit of the Constitution.

A proceeding may be of a judicial nature and involve the exercise of judicial functions, but still fall short of being a judicial proceeding, which latter involves the presence of parties, an opportunity to be heard, and the tribunal must proceed either to a determination of facts upon evidence or of law upon proved or conceded facts. Both these elements are necessary to a judicial proceeding.

In order that justices of the Supreme Court may entertain such proceeding, the affidavit upon which it is based must show the conditions under which the statute authorizes the proceedings to be brought.

Said proceeding cannot be invoked for the purpose of examining the mayor of the city of New York and other city officials as to contracts which it is alleged said officers intend to let pursuant to chapter 777 of the Laws of 1911, relating to the removal of railroad tracks from city streets at grade and to changing the location of said railroad in certain places, where it appears from the moving affidavits that no contracts have been actually let and no money or funds have actually been diverted or misapplied, but that said officers have merely considered reports and other matters relating to said proposed improvement. And especially is the remedy inappropriate where a suit in equity brought by taxpayers is pending for the purpose of restraining said proposed action of the municipal authorities, for the propriety thereof can be determined judicially in said suit.

Moreover, said statute gives no authority to summon the mayor of said city for examination, but relates only to certain enumerated officials.

While, *it seems*, that a writ of prohibition may lie to restrain the action of justices of the Supreme Court under said section of the charter, this extraordinary remedy should not be granted where other remedies are available, and in the case at bar there is sufficient remedy by a motion to vacate the order for examination made under said section.

As such motion to vacate the order could be entertained at Special Term, it may equally be entertained by the Appellate Division in its inherent jurisdiction under the State Constitution, although such motion is not specially authorized by section 1348 of the Code of Civil Procedure.

The Legislature cannot curtail the constitutional jurisdiction of the Supreme Court, although it may extend the same, and no Code provision is necessary to confer jurisdiction when the same is derived directly from the Constitution.

MOTION by John Purroy Mitchel, as mayor, for an alternative writ of prohibition directed to James C. Cropsey, a justice of the Supreme Court, commanding him to desist from further proceedings under an order made by him pursuant to section 1534 of the charter of the city of New York (Laws of 1901, chap. 466), dated March 2, 1917, for the examination of said John Purroy Mitchel, mayor of the city of New York, and other city officials therein named.

At the same time there was presented and argued before this court a motion to vacate the said order for the examination.

Pursuant to chapter 777 of the Laws of 1911, the board of estimate and apportionment was considering a proposed contract with the New York Central railroad to remove the tracks of the railroad from the streets of the city at grade, and to effect many changes as to the location and character of the road from Dyckman street to Battery park. Plans and profiles and maps of the proposed work had been made, reports of committees received, a proposed contract drawn, the matter referred to a committee of the whole, and a public hearing advertised. Further proceedings were halted on January 15, 1917, by a preliminary injunction granted in a taxpayer's action. Meanwhile, and pending the taxpayer's action, and while the board is yet under said injunction, the order which is the subject of these proceedings was granted.

*Charles E. Hughes* [*Lamar Hardy, Corporation Counsel,* with him on the brief], for the motion.

*William M. Bennett,* opposed.

BLACKMAR, J.:

We are met at the threshold of the case by the claim that the statute (Greater N. Y. Charter [Laws of 1901, chap. 466], § 1534) is unconstitutional because it is said to confer non-judicial functions upon justices of the Supreme Court. The statute authorizes a justice of the Supreme Court in the first or second .

judicial department to order a summary examination in public of any member of the board of aldermen, commissioner, head of department, chief of bureau, deputy thereof or clerk therein, or other officer of the corporation or person. .It provides that the order shall be based on an affidavit of the mayor, or of the comptroller, or any five members of the board of aldermen, or any commissioner of accounts, or of any five citizens who are taxpayers; that the examination shall be confined to an inquiry into any alleged wrongful diversion or misapplication of any moneys or fund, or any violation of the provisions of law, or any want of mechanical qualifications or any neglect of duty of inspectors, or any delinquency charged in the affidavit touching the office or the discharge or neglect of duty; and that the examination may be continued before any other justice in the department. The act provides that the justice holding the examination may summon witnesses and punish any refusal to attend or testify as for a contempt of court, and that said justice shall have as full power and authority to enforce obedience to the order or directions of himself or any other justice as any justice of the court may have in any other case or matter whatever. Such examination is to be reduced to writing, filed in the office of the county clerk, and shall be accessible to the public; and notice of the same shall be given to the department in which said officer is employed.

The end and object of the proceeding is the taking of testimony regarding alleged wrongful acts of city officers, for publicity, and for the information of a city department. A proceeding which has this end and object is not a judicial proceeding. All the power and authority conferred by the act, except, perhaps, the power to punish for contempt, may be and often is intrusted to commissioners and boards, which are in no sense judicial tribunals. Instances of this are the powers conferred on the commissioners of account, civil service commissions, public service commissions, the Banking Department and the board of aldermen. It is not related to any judicial action. Analogous statutes, known as the Anti-Monopoly Laws, being chapter 383 of the Laws of 1897, and chapter 690 of the Laws of 1899, which are now contained in the General Business Law (Consol. Laws, chap. 20 [Laws of 1909, chap. 25], §§ 340–346,

as amd. by Laws of 1910, chaps. 394, 633), have been much dis
cussed by the courts; and many and divergent opinions pro-
nounced by different judges as to the character of the duty
thereby cast upon justices of this court. The last and most
searching analysis of the act of 1899 was made by Judge VANN
in *Matter of Davies* (168 N. Y. 89), who reached the conclusion
that the act might be sustained because it was related by
express terms to an action to be brought by the Attorney-
General in the interest of the People to suppress a monopoly.
In this particular, seemingly held essential to the validity of
the act by the Court of Appeals, the charter provision in ques-
tion is entirely wanting. Although the powers conferred by
the act might be used in aid of a taxpayer's action, it bears no
legal relation to it. The act does not in terms refer to a tax-
payer's action authorized first in 1872, a year before the act in
question was passed (Thomson Taxpayers' Actions, pp. 11,
24–26, 131 *et seq.;* Gen. Mun. Law [Consol. Laws, chap. 24;
Laws of 1909, chap. 29], § 51); the testimony obtained cannot
be used as evidence in a taxpayer's action; the application for
the order may be made as well by city officials by virtue of their
office as by taxpayers; mechanical qualifications of inspectors is
not the proper subject of a taxpayer's action; one taxpayer may
maintain an action, whereas it requires five to bring these pro-
ceedings; the act itself is part of the city charter, and the
disposition of the testimony taken, with notice thereof to a city
department, shows that the proceeding is intended to be a
purely administrative proceeding and an adjunct to city
administration.

The end and object of all civil judicial proceedings is the
enforcement or protection of a right, or the redress or preven-
tion of a wrong. So the Supreme Court of the United States
in *Gordon* v. *United States* (117 U. S. 697) refused to entertain
an appeal from the Court of Claims because that court did not
pronounce an enforcible judgment, but its decisions were
practically advisory only.

But the fact that proceedings have such end and object does
not alone make them judicial. This end, which we may for
convenience call a judgment, must be reached in a judicial
manner. There must be parties, and opportunity to be heard,

and the tribunal must proceed either to a determination of facts upon evidence or of law upon proved or conceded facts. When both these elements are present there is a judicial proceeding.

A proceeding may be of a judicial nature, and involve the exercise of judicial functions, but fall short of being a judicial proceeding. Such is the proceeding authorized by the statute under consideration. It does not result in any judgment or determination. It is simply an administrative investigation, and its sole validity is in its relation to the city government.

But I think it does not follow that the power cannot be conferred on a justice of this court. Our Constitution divides governmental powers into three branches; by its terms it confers one, the legislative, on the Senate and Assembly; another, the executive, upon the Governor and Lieutenant-Governor, and it then continues and creates courts and provides for the exercise of judicial powers. Undoubtedly these governmental powers are distinct in their very nature. Their separation is essential to freedom, and a union of the three in one person or body leads to tyranny. These principles have been vigorously set forth by our Court of Appeals (*People ex rel. Burby* v. *Howland*, 155 N. Y. 270; *Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 id. 123), but are nowhere more tersely expressed than in a resolution of the Circuit Court of the United States, composed of Chief Justice JAY and Justices CUSHING and DUANE, in refusing to perform as a court certain non-judicial functions attempted to be cast upon it by Congress. The resolution is as follows: "That by the Constitution of the United States, the government thereof is divided into three distinct and independent branches, and that it is the duty of each to abstain from, and to oppose, encroachments on either. That neither the legislative nor the executive branches, can constitutionally assign to the judicial any duties, but such as are properly judicial, and to be performed in a judicial manner." (Foot note to *Hayburn's Case*, 2 Dall. 409.) The resolution passed in 1792 is equally true to-day, and of our State as well as the United States Constitution. A purely legislative or executive function cannot be cast on the courts, for that would violate the provisions of the Constitution vesting the

legislative power in the Senate and Assembly and the executive power in the Governor. But this line of demarcation has never been so artificially drawn as to prevent assignment to justices of this court of duties which relate to their general powers, or which call for the exercise of judgment or of that peculiar knowledge and skill which are the result of judicial experience. Many duties of this character are exercised by justices of the Supreme Court and judges of the County Court, instances of which are acknowledgments of deeds, adoption of children, appointment of commissioners of condemnation, approval of certificates of incorporation, guardianship of children and of the insane. A justice who acts under section 1534 of the charter is called upon to exercise functions much more nearly approaching the judicial. He must determine whether the affidavit makes out a case under the statute; he must decide upon the relevancy of the evidence to the charges contained in the affidavit, and finally, in aid of the examination, he may punish for contempt — a power essentially judicial.

Although this proceeding itself cannot be called a judicial one, yet judicial methods are used, and judicial powers incidentally invoked; and, bearing in mind the duty of the courts to sustain acts of the Legislature, if by any reasonable interpretation that can be done, I am led to the conclusion that the act casting on the justices of this court the power to order such examination does not violate either the letter or the spirit of the Constitution.

It is obvious that without the authority of such a statute, no justice could call before him the heads of departments of the city government and private persons, to be questioned either in aid of the administration of the city government or to satisfy public curiosity. It is, therefore, a special statutory power, and can be exercised only " in such cases, under such circumstances and in the manner in which the statute directs." (*Warren* v. *Union Bank of Rochester,* 157 N. Y. 259.) The affidavit on which the order is based must show the conditions under which the statute authorizes the proceedings to be brought. We are brought thus to a consideration of the meaning and scope of the act and an analysis of the affidavits.

The provision in question was passed in 1873, as part of an act entitled "An act to reorganize the local government of the city of New York" (Laws of 1873, chap. 335, § 109). The corruption of city officials and the looting of the city treasury by the so-called Tweed ring at that time is part of the history of the city of New York. The commissioners of accounts then had no power to compel the attendance of witnesses or to administer oaths or take testimony. (Id. § 106.) This provision of section 109 of the act, which was practically the charter of the city, was undoubtedly intended to vest somewhere the powers which were subsequently given to the commissioners of accounts by chapter 516 of the Laws of 1884 (amdg. Consol. Act [Laws of 1882, chap. 410], § 110; now Greater N. Y. Charter [Laws of 1897, chap. 378; Laws of 1901, chap. 466], § 119, as amd. by Laws of 1916, chap. 517) and the justices of the Supreme Court were selected as its depositories. (See, also, Consol. Act, § 60; Greater N. Y. Charter, § 1534.) It was intended to expose the acts of corruption and raids on the city treasury, then believed to be prevalent, and obviously not to investigate the propriety and wisdom of questions of a legislative nature pending for determination or action. The wording of the act is apt for this purpose. The examination is confined to alleged (*i. e.*, alleged in the affidavit on which the order is based) wrongful diversion or misapplication of any moneys or fund, or any violation of the provisions of law, or any delinquency touching the office or the discharge or neglect of duty. To bring this case within the act the affidavit must show these existing facts. The charging part of the affidavit is paragraph VII. It is as follows: "The Board of Estimate and Apportionment of the City of New York is about to cause said plans and profiles to be approved and said contract and deed to be executed, so as to create a contract between the City of New York and the said New York Central Railroad Company which will alienate lands and lands under water, water front and other public places belonging to the City of New York in violation of the Statute and will close streets and avenues and deed the fee thereof to said Railroad Company, in violation of Statute; and said contract about to be executed by said Board of Estimate and Apportionment in dereliction of their duty violates the Statute

of the State of New York in numerous other particulars, as set forth in the said affidavit of J. Bleecker Miller." The affidavit of Mr. Miller is a specification of the particulars of such charge. It consists of a criticism of the submitted plans, profiles, proposed contract, and of the reports of the committee of the board. To consider plans and profiles submitted by the railroad company is not a delinquency, nor is it such for the board of estimate and apportionment to propose changes therein. To receive a report of a committee is not a delinquency, nor is it to direct the corporation counsel to draw a proposed contract. The whole matter is before the board for action, and there can be no diversion of funds, no violation of statute nor delinquency until the board has acted. Now this affidavit shows nothing of the kind. It shows simply a proposition pending before the board of estimate and apportionment to carry out powers granted by the Legislature. The proposed contract may never be carried out. In fact it cannot be until an injunction issued in the Supreme Court, where the question of its legality may be determined by a tribunal with power to hear fully, judicially determine, and carry into effect its judgment, is dissolved. The presumption is that if the criticisms of Mr. Miller are well founded, and if the contract on the whole is not beneficial to the city, the board of estimate and apportionment will not make it. No great public improvement can be carried out without serious differences of opinion as to its wisdom or perhaps legality.

After long public agitation, a comprehensive law was passed (Laws of 1911, chap. 777) involving radical changes of the franchises of the New York Central railroad all along the west side of the city from Dyckman street to Battery park; removal of the tracks from the streets at grade, electrification of the road, granting by the city real property and rights to the railroad company, and acquiring from the railroad company real property and rights. The proposition required an agreement with the railroad company. Pursuant thereto long-continued investigations have been had, plans and profiles showing the contemplated work have been drawn and exhibited, a proposed contract drawn by the corporation counsel, and the whole matter is pending before the board of estimate and apportionment. It

appears from the papers that no action has been taken. No money or funds have been diverted or misapplied. No provision of law has been violated, and there has been no delinquency touching the office or the discharge or neglect of duty, unless the work of the committee of the board in investigating and reporting, or the work of the corporation counsel in changing the form of the proposed contract, is such. None of the officers to be examined has performed any official act, other than investigation, negotiation and preparation for action. The matter lies before the board of estimate and apportionment, unacted on just as a bill in the Legislature, which has been reported on by a committee, lies before the body for legislation. The Legislature has provided a way by which the legality of official acts can be tested, by a suit in equity, where all parties can be fairly heard and an effective judgment pronounced and proposed acts of illegality enjoined, and such action is now pending. These are not questions which call for the exercise of the power which long ago the Legislature devolved on justices of the Supreme Court to investigate and expose corruption. It would be intolerable if, in respect to every pending proposition. before the board of estimate and apportionment, from building a subway or bridge to acquiring land for a schoolhouse, all the heads of departments of the city could be haled into court and cross-examined by disaffected taxpayers, or even by some other hostile official, with no result except publicity. It is much better that proceedings of this kind should be confined to the legitimate purposes of the law.

It is clear that the statute gives no authority to summon the mayor for examination. If that had been the intent of the Legislature it would have been expressly so declared, especially as it is provided that the mayor may initiate the proceedings. In specifying the persons who may be summoned the act enumerated certain officials, beginning with a member of the board of aldermen and descending through the official scale to a clerk of a bureau, and then follows the general words, "or other officer of the corporation or person." The application of the doctrine *ejusdem generis* prevents the word "officer" from including the mayor, and his official position prevents his designation by the word "person."

There remains to be considered the question of remedy.   The law in question did not appoint the justices of this court commissioners to conduct the examination, designating them by official and not personal description.   It conferred the power on them as judges, so extending their functions.   The justices were selected to conduct the examination in order that they might proceed in a judicial manner and use judicial powers. The power to punish for contempt is purely judicial, and the act expressly provides that the acting justice shall have as full power and authority to enforce obedience to the order or directions of himself or any other justice as in any case or matter whatever, that the proceedings before one justice may be continued before another, and that the acting justice may punish by imposition of costs one who promotes the examination without probable cause.   These powers are peculiar to a judge and not to a commissioner; and I conclude that the justice making the order acts as a judge.   The writ of prohibition, which is peculiar to judicial tribunals, is a proper remedy. And so prohibition was granted in a proceeding similar to this in that it conferred special powers of investigation on the Supreme Court.   (*Matter of Metz* v. *Maddox,* 189 N. Y. 460.) But the remedy by prohibition is extraordinary and available only if there be no other remedy.   I think there is a sufficient remedy in the motion made to vacate the order.

It is objected to the motion that the Appellate Division cannot entertain it because it is not authorized by section 1348 of the Code.   That section is limited to motions to review orders in actions and special proceedings, and this is neither one nor the other.   The Constitution (Art. 6, § 2) provides that from and after the last day of December, 1895, the Appellate Division shall have the jurisdiction now exercised by the Supreme Court at its General Terms, and such additional jurisdiction as may be conferred by the Legislature.   The Legislature cannot, therefore, curtail its jurisdiction, although it may extend it. It is necessary, then, to consider what jurisdiction the General Term of the Supreme Court exercised on December 31, 1895. This has been the subject of judicial determination, and it has been held that the General Term and Special Term were

branches of the same court; that the General Term, as its name implied, had all the jurisdiction vested in the court, and could make any order which could be made by the court at Special Term. (*Matter of Barkley*, 42 App. Div. 608, and cases there cited.) And this decision is approved in *Campbell* v. *Friedlander* (51 App. Div. 191). Section 1348 of the Code of Civil Procedure expressly authorizes such a motion to the Appellate Division in actions and special proceedings; but it does not need the authority of the Code to confer jurisdiction when the same is derived directly from the Constitution. The motion could be entertained at Special Term. (*Matter of Foster*, 139 App. Div. 769; *Matter of Attorney-General*, 21 Misc. Rep. 101; 22 App. Div. 285; appeal dismissed, 155 N. Y. 441; *Matter of Attorney-General*, 32 Misc. Rep. 1; 55 App. Div. 245; revd., 168 N. Y. 89.) In this line of cases a motion to vacate an order for examination analogous to the one under consideration was assumed to be the correct practice. And although the cases were written in by eleven judges, the motion to vacate was entertained and passed upon on its merits. As the Special Term could have entertained the motion to vacate the order, so may the Appellate Division.

It is true that ordinarily the Appellate Division will not entertain such motions, but will remit the applicant to the Special Term, but I think in this case it may be done without establishing any dangerous precedent. The motion for the alternative writ is pending before the court. It requires consideration of the same questions as presented in the motion to vacate. In the interest of economy of time and labor, there is no reason why the two motions should not be entertained together.

The motion for an alternative writ of prohibition is denied, without costs, and the motion to vacate the order for the examination of the mayor and others is granted, and that order vacated and set aside, without costs.

JENKS, P. J., THOMAS, STAPLETON and RICH, JJ., concurred.

Order for an alternative writ of prohibition denied, without costs, and motion to vacate the order for the examination of the mayor and others granted, and that order vacated and set aside, without costs.