In the Matter of a Summary Inquiry into the Use of Property of the CITY OF NEW YORK and Use of Services of its Employees for Private Purposes, etc.

EUSTACE SELIGMAN et al., Petitioners.

Supreme Court, Special Term, Bronx County, June 22, 1942.

*Louis S. Lewis* and *V. Henry Rothschild, III,* for petitioners.

McCook, J.  A group of six persons, asserting they are tax-payers of New York city and have the support of the City Club, a nonpartisan civic organization, present *ex parte* a petition, accompanied by affidavits and copies of public documents, pray-ing for an order, pursuant to section 889 of the New York City Charter, directing a summary inquiry into the use of property of the city of New York and use of the services of its employees for private purposes, and other alleged violations and neglects of duty in relation to the property, government, and affairs of this city.

The petition alleges that in November, 1941, and on other dates, work, unrelated to official business but using tools, equip-

ment, vehicles, gasoline, and oil which are the property of the city, was done by employees of the city, acting outside their city duties, in paving part of a private estate in Putnam county with granite blocks, which were the property of the city; that this work was done with the knowledge and approval of Mr. Edward J. Flynn, owner of the private estate, or persons acting under his authority; that the work was done with the knowledge and approval and under the supervision of Mr. Robert L. Moran, Bronx Commissioner of Borough Works, and of Mr. Fred Dennerlein, Inspector of Regulating, Grading and Paving in the office of the President of that borough, and of other city officers and employees with similar knowledge; that officers and employees of the city in the same borough, and other persons, have on other occasions used for private purposes automobiles, equipment, and other property of the city and the services of city employees while on city time and while in receipt of city pay; that by reason of such facts, city officers and employees and others are " guilty of violations and neglects of duty in relation to the property, government and affairs of the City of New York and have violated and neglected their duties as trustees of the property, funds and effects of the City of New York;" and that no public record has been made of evidence establishing such violations and neglects.

The prayer in the petition and the provision in the proposed order are broad enough to cover a city-wide and not merely a local inquiry.

The petition depends upon affidavits of all of the six petitioners, of which the first and longest, made by a member and trustee of the City Club, states facts referred to and adopted by the affidavits of the others. It is based entirely, according to the affidavits, on what are called three, but actually are four, public documents submitted with the papers, dated respectively February 20th, February 24th, April 22nd and May 5th, 1942. The first and second are reports of Mr. William B. Herlands, Commissioner of Investigation, addressed to the Mayor, upon the subject of " Unlawful use by the Bronx Borough President's office of municipal employees, materials and equipment in connection with private work for Edward J. Flynn." The third is a report of Commissioner Herlands to the Mayor, upon the subject of " Irregularities in the Office of the Borough President of the Bronx * * *." The fourth is a presentment and report by the March, 1942, grand jury of Bronx county. Obviously, therefore, if there is ground for this application it must be found primarily in the Herland's reports or the grand jury report.

The petitioners state that the evidence obtained in these previous investigations was not made public, an omission they seek to remedy by the proposed inquiry through the suggested calling of witnesses whom they name, and of others unnamed. This is on the ground that these documents show, as they do, the use in certain instances of city property and employees for private purposes, which petitioners correctly characterize as violations and neglects of duty in relation to the city's property, government, and affairs, and on the further ground that the city's citizens are entitled to know who is to blame for such violations and neglects " so that their fitness to continue to hold office or remain in the employ of the City of New York may be known, and appropriate measures taken on behalf of the public to effect restitution in the case of property of the City of New York which has been misappropriated.''

Undoubtedly the public are entitled to have such knowledge, but they already have it if the very reports upon which petitioners rely sufficiently summarize the facts.

The persons expressly named in the papers as proposed witnesses for the inquiry are Paul J. Kern, former President of the Civil Service Commission, said to have made the original charges; Edward J. Flynn, for whose estate the city's property and employees were used; his wife, Mrs. Flynn, and his landscape architect, Mrs. Haas, who directed the work; James J. Lyons, Bronx Borough President, charged with responsibility for this and other violations; Robert L. Moran and Fred Dennerlein, borough officials, who directed the work on the Flynn estate; and Harry Standish, Bronx Borough Engineer. All of these persons except Mrs. Flynn and Mr. Standish, are expressly stated to have been witnesses, and the context indicates that these two persons also testified.

It is not shown that if the eight were called again on the proposed inquiry the evidence would differ from what it was before. The same is true of the laborers (named in the exhibit attached to a Herlands report) who performed the actual work on the Flynn estate. As to unnamed proposed witnesses, whether previously called or not, the court is unable to say from the papers what facts, if any, would be added by them to those already found and summarized in the reports.

Petitioners contend that neither the Commissioner of Investigation nor the grand jury fixed the responsibility for the misuse, violations, and neglects of duty charged, or made any effort to fix such responsibility, or hold those responsible to accountability. This is a broad assertion which is not supported by a

study of the reports. Both the grand jury and the Commissioner found evidence of "many irregularities" in the Bronx, although after taking up Mr. Kern's charges one by one most of them were rejected, and the jury expressly found absence of widespread corruption in that borough.

Specifically the grand jury found, among other matters: "That records kept were insufficient and that inefficient administration opened the door to abuses;" it described "a deplorable condition" in the Department of Highways and Sewers in the office of the President of the borough, saying that the President of the borough "cannot avoid any responsibility for the manner in which any subordinate conducts a department." It said further: "We strongly condemn the use of City cars for private purposes in any degree, particularly in these times when every effort is being made to economize and conserve." Finally, the following language is used: " * * * the irregularities and abuses which have been found to exist in respect to the use by Flynn of City cars and station wagons within the City of New York resulted from the close political association of Mr. Flynn and Mr. Moran and that Mr. Flynn's high position in his political party was a contributing cause." The court takes judicial notice of the fact that the Edward J. Flynn referred to was formerly State Chairman and at the time of these events was, and still is, County and National Chairman of the party dominant in the county of the Bronx, the State of New York, and the United States of America.

These findings by the grand jury are followed by specific recommendations for promulgation by the Mayor of rules for the use of cars, for establishment by the Borough President of accurate records, especially as to the use and designation of vehicles and other city material and property, for proper supervision and record of overtime accruing to men employed in the Borough President's office, and for prevention by the Mayor of competitive duplicate investigations by the city departments. This report found also that Mr. Kern's independent investigation "hampered the orderly progress of an experienced and competent investigator and made extremely difficult the task of determining the truth * * *." The jury expressed itself as refraining from further characterization of his motives because of the existence of litigation between him and the Mayor involving these matters, or some of them.

The reports of the Department of Investigation found that the Municipal Civil Service Commission had, by premature acts and disclosures, hampered the previously undertaken investigation of the Flynn matter by Mr. Herlands; that Dennerlein had

made false entries and certifications to cover the private work on the Flynn estate; that improper assignment of cars and men for the Flynn estate had been made; that there had been attempts at so-called restitution by Mr. Flynn's employee, Mrs. Haas, including $423.38 for the workmen; that Mr. Moran used during all one summer a city car for his private family purposes; '' that for more than a generation it has been the practice in the Bronx to permit the Bronx Democratic county leader to have the use, when requested, of the Borough President's official cars,'' and that Mr. Flynn frequently availed himself of the privilege for passengers and baggage; that '' passenger cars, station wagons and employees assigned to the Bronx Borough President's office had been used improperly and unlawfully as a favor to Edward J. Flynn. These irregularities fall within the same pattern of misconduct described in our prior reports of February 20th and 24th, 1942.''

These two investigations were certainly not short or hurried. The Herlands record contains 1,518 pages of testimony. The grand jury heard 85 witnesses and received 203 exhibits in 14 sessions. In addition to them, Mr. Kern conducted his own independent investigation, with 648 pages of testimony (referred to but not reported so far as appears from the documents here submitted). There was some overlapping, but no indication of suppression of relevant evidence; indeed, the nature of the differences between Mr. Kern on the one hand and the Mayor and his Commissioner of Investigation on the other, which appear to have been a subject of resulting litigation, tended rather ultimately to insure the bringing-out of all the facts.

Of course the court is entitled to draw all proper inferences from facts stated in the reports, and is not bound to accept their conclusions. However, petitioners have not pointed to any inferences which, if accepted, would substantially add to or modify the facts summarized in the reports, nor to any conclusions there reached which the court is required to reject as a matter of law, judicial notice, or common sense.

Is it not, rather, permissible to infer from what petitioners say and refrain from saying that their fundamental complaint is something quite different? They are clearly dissatisfied with a situation created by the failure of the grand jury to find indictments, and the lack of subsequent action along criminal or civil lines by the District Attorney, or Mr. Herlands, or other public officials. This court cannot say, upon these papers, that the grand jury should have found true bills, or that it was badly advised by Samuel J. Foley, the present incumbent whom the

Governor has recently declined to supersede in connection with this very matter. I find nothing to prevent the District Attorney, the Governor, or the Mayor from reopening these charges, on the same or different evidence, should they see fit. There is no reason to suppose that the public officials of the city and State will not follow up the findings and recommendations made in the various reports, or will refrain from taking appropriate action. No avenue of redress (to use the language of the brief) has been or necessarily will be cut off. It is not suggested, by the way, that this court should direct any action except the attendance and examination of witnesses.

The validity of section 1534 of the Greater New York Charter, the predecessor of section 889 of the New York City Charter (1938), has been sustained hitherto in both departments. (*Matter of Leich*, 31 Misc. 671; *Matter of Hertle* [*In re Ahearn*] 120 App. Div. 717 [First Dept.], affd. 190 N. Y. 531; *Matter of Mitchell* v. *Cropsey*, 177 App. Div. 663 [Second Dept.]. Such distinguished Justices as GAYNOR, McLAUGHLIN and BLACKMAR have given the subject exhaustive study. None of the various examinations provided for by law is exclusive of the others, and the occurrence of previous investigations of the same subject-matter does not in and by itself render a summary inquiry improper. The statute should be liberally construed, and every available means to examine the administration of the city departments and the officers of its government should be utilized to the fullest necessary extent. The legal situation is entirely different from that adversely passed upon by the late Judge CARDOZO in *Matter of Richardson* (247 N. Y. 401).

The objections seen by the court are substantial, and not formal or technical. Granting or denying such an application is a matter of sound judicial discretion. In the circumstances, no advantage will accrue to the city of New York and its people, or any of them, from a new and summary inquiry under the direction of this court at this time based upon these papers. To conduct it would constitute in the main, if not altogether, a duplication of effort, and prove more expensive in time and money than appears warranted by any prospect of the removal by such means of persons now in office, the recovery of money and property not already restored, the securing of any tangible reform not yet attained, or the learning by public officials and others of any lesson not already learned.

However estimable the motives of the petitioners, the court holds they have not made out a case for the kind of remedy they desire. The papers will be filed. The application for making the proposed order is denied.