In the Matter of GILBERT GREENFIELD et al., Petitioners, against MICHAEL J. QUILL, as a Member of the City Council of the City of New York, Respondent.

Supreme Court, Special Term, Kings County, December 31, 1946.

*Joseph Goldstein* for petitioners.

*Harry Sacher* for respondent.

FROESSEL, J.  Seven petitioners, citizens and taxpayers of the City of New York, have applied to this court for an order " that a Summary Inquiry be held in this Court under the provisions of Chapter 40, of the New York City Charter, Sections 886, 889, 890 and other applicable sections of the New York City Charter and other provisions of law applicable thereto, into violations and neglect of duty by the said respondent, Michael J. Quill, with respect to the conduct of his office as Councilman of the City of New York, in relation to the property, Government, or affairs of the City of New York."

According to the petition, the respondent was and still is a member of the City Council of the City of New York, receiving an annual salary in the sum of $5,000; that at the time that he assumed such office, and at the present time, he was and still is the international president and employee of the Transport Workers Union of America, and was and still is an official

of the Transport Workers Union of Greater New York, Local 100, which operates under a charter granted by the International Transport Workers Union of America; that for his services to said union the respondent is paid the sum of $5,200 per annum and expenses; that the members of the Transport Workers Union of Greater New York, Local 100, are composed of approximately 32,000 persons, who are employed by the Board of Transportation in the City of New York, which board is set up by article VIII of the Public Service Law (§ 130 *et seq.*), and which persons are engaged in operating the subways, street cars, elevated lines and busses owned by the City of New York; that the said Board of Transportation in the city of New York " is a State instrumentality ", but it is so only for the purpose of operating and managing the transit system owned by the City of New York, and its expenses are paid out of the treasury of the City of New York, and its employees are New York City employees, whose salaries are paid out of the New York City Treasury; that while acting and functioning as City Councilman of the City of New York, the respondent was and still is " interested " in said union, and his salary from the union is derived from dues paid by the said 32,000 transit workers whose source of income is the salaries which they receive from the City Treasury as aforesaid.

The petition further alleges, among other things, that the respondent, at divers times, subsequent to his assuming the office of councilman on January 1, 1946, caused great damage and injury to the property, government and citizens of the City of New York by the use of threats directed to the Mayor and other officials of the city and the Board of Transportation of the City of New York, in that as an employee of the union he threatened to call a strike and to direct the members of the union to cease to operate the subways, trolley cars, elevated lines and busses owned by the city unless a contract should be granted to the union, with full, sole and exclusive bargaining rights and constituting said union to be the sole bargaining agent in any dispute arising between it and the city, and unless the Board of Transportation would cease from making any contract to dispose of the powerhouses forming a part of the transit system of the city of New York.

In short, and in the language set forth in the brief of counsel for petitioners: " It is the petitioners contention that Michael J. Quill, the respondent has violated Section 886 of the New York City Charter with respect to the government and affairs

of the City of New York by receiving a salary as City Councilman and at the same time receiving a salary as an employee of persons who do work for the City and whose salaries are paid from the City Treasury of the City of New York.''

While the respondent's answer denies many of the conclusory allegations of the complaint, it admits that the respondent is, and has been a Councilman of the City of New York, receiving a salary of $5,000 per annum; that he is also the international president of the Transport Workers Union of America; that his union salary as such President is $100 per week '' with such expenses as he incurs in the performance of the duties of his office ''; that among the members of Local 100 are a large number of persons employed by the Board of Transportation of the City of New York who are engaged in operating the subways, streetcars, busses and elevated lines owned by the City of New York; that the Board of Transportation is a State instrumentality, and that for certain purposes its employees are deemed employees of the City of New York; and that respondent has at all times been interested in said employees.

Thus it appears there is no controversy as to the basic facts, as distinguished from legal conclusions, between the parties to this proceeding. Section 889 of the New York City Charter, formerly section 1534 of the Greater New York Charter (L. 1901, ch. 466), and derived from section 109 of chapter 335 of the Laws of 1873, entitled '' An Act to reorganize the local government of the city of New York '', so far as pertinent, provides as follows: '' A summary inquiry into any alleged violation or neglect of duty in relation to the property, government or affairs of the city may be conducted under an order to be made by any justice of the supreme court in the first or second judicial district, on application of　＊　＊　＊　any five citizens who are taxpayers, supported by affidavit to the effect that one or more officers, employees or other persons therein named have knowledge or information concerning such alleged violation or neglect of duty. Such inquiry shall be conducted before and shall be controlled by the justice making the order or any other justice of the supreme court in the same district. Such justice may require any officer or employee or any other person to attend and be examined in relation to the subject of the inquiry.＊　＊　＊　The examination shall be reduced to writing and shall be filed in the office of the clerk of such county within the first or second judicial district as the justice may direct, and shall be a public record.''

Its constitutionality has been sustained in *Matter of Leich* (31 Misc. 671) and *Matter of Mitchel* v. *Cropsey* (177 App. Div. 663). As was said in the latter case: "This provision of section 109 of the act, which was practically the charter of the city, was undoubtedly intended to vest somewhere the powers which were subsequently given to the commissioners of accounts * * * and the justices of the Supreme Court were selected as its depositories. * * * It was intended to expose the acts of corruption and raids on the city treasury, then believed to be prevalent and obviously not to investigate the propriety and wisdom of questions of a legislative nature pending for determination or action."

A previous application with respect to this very subject matter was made by petitioners' counsel early this year, which application was denied by Mr. Justice Norton in *Matter of Rolnick* (*Quill*) (N. Y. L. J. March 28, 1946, p. 1222, col. 1) who said, among other things: "The petitioners have misapprehended the purpose for which section 889 was intended. There is nothing in this section of the charter which permits this court to oust a public officer or to declare his office vacant. The section simply provides that upon presentation of papers in compliance with its provisions ' officers, employees or other persons having knowledge or information concerning violation or neglect of duty ' may be examined, their examination reduced to writing and filed in the county clerk's office, there to become a public record. This is the extent of the power and authority of this court in a proceeding of this nature."

Upon the record before me, there seems to be no need for any summary inquiry. It is conceded that the respondent receives a salary from the city as City Councilman, and at the same time receives a salary from the union. Upon these basic undisputed facts the petitioner claims that section 886 of the City Charter has been violated. The legal question as to whether, for present purposes, the Board of Transportation employees are city employees, as contended by petitioners (*Ferdinand* v. *Moses*, 26 N. Y. S. 2d 382), or State employees, as contended by respondent (*Matter of Colbert* v. *Delaney*, 249 App. Div. 209, affd. 273 N. Y. 626, and cases cited therein), or whether transport workers, after having received their salaries, may spend them as they please, as contended by respondent, or must keep them earmarked as city moneys, as contended by petitioners, need not be determined upon this application. Nor is the wisdom or propriety of the respondent councilman's

union activities a matter upon which the court in this proceeding may judicially comment. Assuming, but in no wise conceding, that petitioners' legal contentions are correct, nevertheless the need for a summary inquiry, when there is no material issue as to the facts, merely to reduce the examination of witnesses to writing for the purpose of filing as a public record, is unjustified, a plain waste of taxpayers' moneys, and would not constitute sound judicial discretion. (*Matter of City of New York* [*Seligman*], 179 Misc. 505.)

Under the circumstances, the application must be denied.