137 N.J. Super. 208 (1975)
348 A.2d 792
IN THE MATTER OF A SUBPOENA DUCES TECUM SERVED ON THE CUSTODIAN OF RECORDS OF INSTITUTIONAL MANAGEMENT CORP.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1975.
Decided November 3, 1975.
*210 Before Judges LYNCH, ACKERMAN and LARNER.
*211 Mr. Norman L. Zlotnick argued for appellant (Messrs. Perskie and Callinan, attorneys).
Mr. Stewart D. Warren and Mr. Howard E. Drucks, Deputy Attorneys General, argued for respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by LARNER, J.A.D.
This appeal involves an attack upon the validity of a subpoena served upon Morton M. Sturm in Burlington County, New Jersey, to produce records of Institutional Management Corp., a corporation of the State of Pennsylvania, before the Burlington County grand jury. The subpoena was issued by a deputy attorney general in the name of the Superior Court Clerk in connection with an investigation of the operations of the Lakewood Nursing Home. The grand jury inquiry is particularly directed to the allocated costs of operation of the Lakewood Nursing Home and their correlation to Medicaid payments made by the State of New Jersey.
Sturm is a principal of Lakewood Nursing Home and president of Institutional Management Corp. While he was in court during an argument relating to the service of a prior subpoena upon Joseph DelCollo to produce the records of Lakewood House and Morton M. Sturm and Associates, Inc. (owner of Lakewood House), he was served with the subpoena in question.
The trial judge considered the motion to quash the subpoena upon the motion papers, exhibits, stipulations of counsel and oral argument, and denied the same. Pursuant to the judge's order the records were produced in sealed cartons and placed in the custody of the court pending appellate review.
The present appellate proceeding was initiated as a motion for leave to appeal. In view of the need for expeditious disposition, we granted leave and heard the matter on its merits *212 by accelerating the time schedule for briefs and oral argument.
Appellant bases its argument as to the invalidity of the subpoena on two major grounds: (1) Sturm was immune from process because of the circumstances surrounding his presence in court when the subpoena was served on him, and (2) the New Jersey court did not have jurisdiction over Institutional Management Corp. so as to validate the process for the production of its records. Other peripheral arguments considered by us are without substance and do not merit discussion.

I
In an effort to obtain the cost records of the Lakewood Nursing Home the Attorney General had issued a subpoena duces tecum addressed to the custodian of records of Lakewood Nursing Home and Morton M. Sturm and Associates, Inc., the owner of the home, and served the same on the administrator of the home, Joseph DelCollo. Through discussion between counsel in court in connection with a motion to quash that subpoena it developed that DelCollo did not have custody of the records. Sturm, the president of Morton M. Sturm and Associates, Inc., was in court at the time, not pursuant to subpoena, in order to be available to establish that DelCollo had no power or ability to comply with the subpoena.
When the deputy attorney general realized this dilemma he prepared another subpoena for the same records and served it upon Sturm as custodian of records of Morton M. Sturm and Associates, Inc. Thereafter argument took place before Judge McGann on the validity of that subpoena served that day. While Sturm remained in court during that argument he was served with a further subpoena which is involved in this appeal, addressed to Institutional Management Corp., which in fact had possession of the records pertinent to the inquiry as to Lakewood Nursing Home expenses.
*213 It is urged that Sturm, a nonresident of New Jersey, was immunized from process because he was in attendance in court pursuant to a prior subpoena at the time he was served.
At early common law nonresidents were immune from civil process while attending or going to and from court proceedings in New Jersey as a witness or a litigant. Halsey v. Stewart, 4 N.J.L. 366 (Sup. Ct. 1817). Later cases followed Halsey, relying upon public policy reasons in favor of the immunity. Massey v. Colville, 45 N.J.L. 119 (Sup. Ct. 1883); Michaelson v. Goldfarb, 94 N.J.L. 352 (Sup. Ct. 1920); Herman v. Arndt, 116 N.J.L. 150 (E. & A. 1936); Riewold v. Riewold, 121 N.J. Eq. 134 (Ch. 1936); Younger v. Younger, 5 N.J. Super. 371 (App. Div. 1949); Randall v. Randall, 14 N.J. Super. 110 (Ch. Div. 1951).
However, our Supreme Court, in harmony with a growing trend toward abandonment of the doctrine, rejected the same in Wangler v. Harvey, 41 N.J. 277, 285 (1963), as a principle "wholly inconsistent with today's concept of justice" and concluded that a nonresident party or witness in civil litigation is generally not immune from process while he or she is in New Jersey in connection with that litigation. Although the court adopted a new concept of determining immunity on factors applicable to the doctrine of forum non conveniens, the facts involved in this litigation would not warrant immunity on that thesis.[1]
Appellant does not assert that he was lured into this jurisdiction by process or otherwise, as a device to serve him with the subpoena for Institutional Management Corp. records, in which event the service of process would have been improper. See Williams ads. Reed, 29 N.J.L. 385 (Sup. Ct. 1862); Ex parte Charles Johnson, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103 (1897); Oklahoma Industrial Finance Corp. v. Wallace, 180 Okla. 363, 69 P.2d 362 (Sup. Ct. *214 1937). He does however advert to the provisions of N.J.S.A. 2A:81-17 and 2A:81-21 as support for the immunity he seeks. The pertinent part of N.J.S.A. 2A:81-17 provides:
Except as provided in section 2A:81-21 of this Title, a witness shall be privileged from arrest in all civil actions, and no other, during necessary attendance at court or other place, required by subpoena previously duly served, and during his going to and returning therefrom, * * *.
It is manifest that this statute grants immunity from arrest to a witness in a civil action and is therefore wholly irrelevant to the issue under consideration.
N.J.S.A. 2A:81-21 provides:
If a person comes into this state in obedience to a summons directing him to attend and testify in this state he shall not, while in this state pursuant to such summons, be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons.
If a person passes through this state while going to another state in obedience to a summons to attend and testify in that state or while returning therefrom, he shall not while so passing through this state be subject to arrest or the service or process, civil or criminal, in connection with matters which arose before his entrance into this state under the summons.
Standing alone, this statute would appear to grant immunity to appellant if he were in New Jersey in obedience to a subpoena. (See definition of "summons" as including subpoena, N.J.S.A. 2A:81-18). From the facts outlined above it is clear, however, that his presence in this State and his availability at the courthouse was not in "obedience" to a subpoena but rather as an observer or prospective witness in connection with the motion to quash brought by DelCollo, who had been served with the process.
Moreover, whether his presence in New Jersey is regarded as voluntary or compelled, the cited statute, N.J.S.A. 2A:81-21, has no applicability to the circumstances involved *215 herein. This section is part of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. N.J.S.A. 2A:81-18 to 2A:81-23. Section 21 must be construed together with the other five sections of the act. As such, it is only brought into play with regard to a witness in a criminal proceeding who has been brought into the State pursuant to the provisions of the Uniform Act.
The procedure under this act involves extensive legal steps in the requesting state and in the harboring state in order to accomplish compulsory process as to an out-of-state witness in a criminal cause. N.J.S.A. 2A:81-19 and 20; see New York v. O'Neill, 359 U.S. 1, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959), for an outline of the practice. When a witness is brought into the state pursuant to the procedures under the Uniform Act he is granted the privilege of immunity from process during the period necessary for compliance with the mandate of the interstate process.
In the absence of the utilization of the procedures set forth in the act, § 21 relating to immunity has no applicability. In re Schuler, 120 N.J. Super. 79 (App. Div. 1972); State v. Seefeldt, 51 N.J. 472 (1968). Appellant has no statutory right of immunity.

II
The second point urged by appellant is that the subpoena has no force or validity because the court has no jurisdiction over Institutional Management Corp. and its records.[2] It is contended that a sine qua non of the enforceability *216 of a subpoena addressed to a foreign corporation's records which are physically located beyond the borders of this State is that the corporation have sufficient contacts in the State of New Jersey to warrant the exercise of jurisdiction in a constitutional sense.
We agree that the acquisition of jurisdiction over a foreign corporation through the process of subpoena is governed by the same principles of jurisdiction which apply in the case of civil litigation involving the process of a summons. Both a subpoena and a summons are forms of judicial process by way of orders of the court resulting in potential sanctions for disobedience. See Gondas v. Gondas, 99 N.J. Eq. 473 (Ch. 1926); In re Simon, 297 F. 942 (2 Cir.1924).
It follows, therefore, that constitutional limitations of jurisdiction over foreign corporations, as mandated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, are controlling with respect to the validity of the subpoena herein. The key question for determination is thus whether Institutional Management Corp. had certain minimum contacts with the State of New Jersey so that the compulsive process of subpoena would not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342-343, 85 L.Ed. 278, 283 (1940). The answer to this question must be derived from the panorama of facts relating to the nature of the activity of Institutional Management Corp. and its relationship with the Lakewood Nursing Home.
As has been noted, the avowed purpose of the grand jury investigation is to determine the true operating costs of the Lakewood Nursing Home and whether these costs support the applications for Medicaid payments made by the Home. Normally, a business organization in New Jersey would have all its business records in this State subject to subpoena, and there would be no barrier to the legitimate *217 inquiry undertaken by the grand jury. The difficulty in this instance arises because of the method by which Lakewood Nursing Home carries on its business.
Lakewood Nursing Home is one of three nursing homes owned or controlled by Morton M. Sturm, who is also the principal-owner and president of Institutional Management Corp. The latter company acts as a management arm of the nursing homes in handling their financial transactions. In fact, the report of the firm accountant for the year 1971 designates Institutional Management Corp. as "Home Office" of the three institutions.
Institutional Management Corp. maintains a computer and utilizes its business equipment to carry on one phase of Lakewood Nursing Home's operation. The records relating to accounts receivable, salaries, and all types of expenses of the Home are forwarded to Institutional Management Corp., which in turn processes them through its data processing equipment and makes payment to the designated payees. It performs the same service for Sturm's other nursing homes as well as other business establishments. With respect to the three nursing homes it lumps together all the payments made on their behalf and adds a total charge for all the data processing services in order to arrive at the bottom line computation of expenses for the three Sturm nursing homes. The accountant's report reflects that the expenses are then allocated as to each of the nursing home operations, not on the basis of the actual expenditures of each home, but rather on a percentage of the respective income figures of each home.
By virtue of the foregoing business technique Institutional Management Corp. has undertaken the performance of a portion of the operations vital to the conduct of the Lakewood Nursing Home. It does so not as an independent entity in an arm's-length relationship, but realistically as the financial office of the Home's operations and as an overseer of its financial activities. Moreover, the bookkeeping method of allocating expenses gives to Institutional Management Corp. *218 exclusive control of the financial destiny of Lakewood Nursing Home.
In light of the intimate and significant part played by Institutional Management Corp. in the affairs of Lakewood Nursing Home, there can be no doubt that the minimum contacts required for jurisdiction are fully spelled out.
The teachings of International Shoe Co. v. Washington, supra, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), have been adopted in a most liberal fashion in the State of New Jersey. The unrestricted test of reasonableness and "traditional notions of fair play and substantial justice" permit the acquisition of jurisdiction in a myriad of diverse fact patterns. See Avdel Corp. v. Mecure, 58 N.J. 264 (1971); Corporate Dev. Spe., Inc. v. Warren-Teed Pharm., Inc., 102 N.J. Super. 143 (App. Div. 1968); Roland v. Modell's Shoppers World of Bergen Cty., 92 N.J. Super. 1 (App. Div. 1966); Hoagland v. Springer, 75 N.J. Super. 560 (App. Div.), aff'd 39 N.J. 32 (1962).
The Restatement of Conflicts 2d (1971) sets forth the controlling principle in a manner which reflects the broad spectrum of circumstances which permit a state to exercise its jurisdiction:
"A state has power to exercise judicial jurisdiction over a foreign corporation * * * in other situations where the foreign corporation has such a relationship to the state that it is reasonable for the state to exercise such jurisdiction." [at § 52]
As observed in Hoagland v. Springer, supra, 75 N.J. Super. at 569: "We cannot disregard the economic realities of the situation exposed by the record in this case." Institutional Management Corp. controls the records of Lakewood Nursing Home and maintains them outside of New Jersey only because of the particular business technique created by the common management of both companies. Under such circumstances, where the data in the records are essential to an inquiry into the financial activities of Lakewood Nursing *219 Home, it is manifestly reasonable to require Institutional Managament Corp. to surrender them to the courts of this State. The exercise of jurisdiction under the realities herein is fully consistent with traditional notions of "fair play and substantial justice." It therefore passes constitutional muster.
In view of the foregoing the order denying the motion to quash the subpoena is affirmed and the State is empowered to open the sealed cartons in the custody of the court and present the contents thereof to the grand jury.
NOTES
[1] The principle of Wanger was further extended to criminal litigation in Santos v. Figueroa, 87 N.J. Super. 227 (App. Div. 1965).
[2] The subpoena was properly served upon Institutional Management Corp. through personal service on its president within this State. R. 4:4-4(c) (1). By the same token, the mere fact that the records are located out of the State does not detract from the duty of the president to exercise his control to produce them if the subpoena is valid. First Nat. City Bank of N.Y. v. Internal Rev. Serv., etc., 271 F.2d 616, 618 (2 Cir.1959), cert. den. 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960).