233 N.J. Super. 247 (1989)
558 A.2d 522
IRA MARXE, PLAINTIFF,
v.
RUTH MARXE, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Bergen County.
Decided April 10, 1989.
*248 Gene Schiffman for plaintiff (Schiffman, Berger & Kaufman, attorneys).
Howard Stern for defendant (Stern, Steiger, Croland, Tanenbaum & Schielke, attorneys).
Robert Ritter for Elwood Mabry (Cole, Schotz, Bernstein, Meisel & Forman, attorneys).
*249 KRAFTE, J.S.C.
A pendente lite motion to quash a subpoena duces tecum has been filed by Elwood Mabry, a nonparty, nonresident witness involved in the matrimonial suit between Ira and Ruth Marxe. Mabry, a resident of North Carolina, and plaintiff, Ira Marxe, co-own Hydrolabs, Inc. and are partners in C.P.M. Realty Associates. Mr. Marxe's interest in both business assets are subject to equitable distribution.
Due to his knowledge and expertise, Seymour Rubin, a certified public accountant, had previously been appointed by this court. Rubin's expertise assists the parties and court in valuation of marital assets. He has access to counsel and parties.
An on-going issue has been the valuation of plaintiff's business assets. To that end, Rubin requested an interview with Mabry. After several discussions, and with plaintiff's assistance, Mabry and his attorney appeared at Rubin's office for depositions on January 30, 1989. During the course of the depositions, defendant's counsel served Mabry a subpoena duces tecum to appear in court on the scheduled trial date, February 6, 1989, and any adjourned date thereafter. Mabry's counsel filed a motion to quash the subpoena. Oral argument was presented. The case has been adjourned.
This court makes the following findings of fact: Mabry was not lured into this jurisdiction; his attendance at the deposition was voluntary; he travelled to New Jersey 11 times during 1988 to meet with plaintiff regarding their joint business ventures; such actions evidence, at the very least, minimum contacts with the State of New Jersey.
The issues before this court are: whether the taking of depositions at the office of a court expert amounts to judicial proceedings, and, if so, does this cloak all in attendance with a veil of immunity; whether or not a nonresident nonparty witness is immune from service of process of a subpoena duces tecum at such depositions; and what is the effective life of a *250 subpoena duces tecum which commands the witness to appear on a date certain and each adjourned date.
Mabry argues that the taking of his deposition at Rubin's office was "in the course of judicial proceedings," and thus, he was immune from the service of process. Judicial proceedings have been described as follows:
[T]here must be parties, and opportunity to be heard, and the tribunal must proceed either to a determination of facts upon evidence or of law upon proved or conceded facts. When both these elements are present, there is a judicial proceeding. [Mitchel v. Cropsey, 177 App. Div. 663, 164 N.Y.S. 336, 339 (1917)]
The purpose of Mabry's presence at the deposition was one of information gathering and to that end, he was asked questions. As is the nature of a deposition, all present are not given the opportunity to be heard; indeed, the purpose of the deposition is an opportunity for the parties to question a witness. Also lacking was any judicial determination of facts disclosed at said meeting. This court finds that the taking of Elwood Mabry's deposition was not within the ambit of a judicial proceeding; the meeting was arranged and conducted independently of the court. Immunity will not be granted to Mabry on this basis as the deposition did not amount to a judicial proceeding.
However, having said so, this court looks to broader concepts of immunity to ascertain whether Mabry can obtain same by virtue of his status as a nonparty, nonresident witness. Mabry's counsel presented citations to support their position that service-of-process immunity has been afforded to nonresident witnesses. This court notes, however, that the cited cases pre-date Wangler v. Harvey 41 N.J. 277 (1963) which is the seminal case in the area of immunity. In Wangler defendant, while present at court in his capacity as executor of an estate, was served with a summons and complaint naming him as a defendant in his individual capacity. Both actions arose out of a single incident and defendant was served while in the hall outside of the courtroom. Defendant moved to quash the subpoena on the basis that his nonresident status coupled with *251 his presence at court provided him with immunity from service of process.
The Wangler Court examined the origins of granting immunity from service of process to nonresident litigants and found that among the earliest reasons were accessibility to the courts and operation of a judicial system without the interruption that could be caused by service of process. The application of immunity was subsequently broadened "despite warnings that it should not be enlarged beyond the reasons upon which it was founded." Id. at 281. The Supreme Court held in Wangler that nonresidents were not immune from service of process while present at a judicial proceeding as either a litigant or a witness. The doctrine of immunity was further abolished in Santos v. Figueroa, 87 N.J. Super. 227 (App.Div. 1965), which held that nonresidents were not immune from service of process while voluntarily in New Jersey to attend criminal proceedings. Specific to a subpoena duces tecum, In re Subpoena Duces Tecum Inst. Manage. Corp., 137 N.J. Super. 208 (App. Div. 1975) held that a nonresident, present in court as an observer or prospective witness, was not immune from service of a subpoena duces tecum while in court during an argument regarding the service of a prior subpoena upon another involved in litigation arising from the same cause of action. Thus our courts have abolished immunity from service of process in civil and criminal matters, regardless of nonresident's status as a litigator or witness. This court is bound to follow the decisions of the higher courts. In doing so, this court finds no basis upon which to grant immunity to Elwood Mabry from the subpoena duces tecum which was served upon him, on his nonresident, nonparty status.
A more vexatious issue is raised by Mabry. The subpoena stated he was to appear in court on February 6, 1989 and any adjourned date thereafter. The current state of the family court dissolution calendar is such that it becomes difficult, if not impossible, to determine when a matrimonial case will again *252 be scheduled for trial. The pending of matrimonial matters has varied from six months to well over two years. Subpoenas such as the one served on Mabry have been referred to as "on-call subpoenas."
Reiman v. Breslin, 175 N.J. Super. 353 (App.Div. 1980), certif. den. 85 N.J. 147, provides a comprehensive survey of decisions which affirm the validity of an on-call subpoena. In Reiman, police officers were served with subpoenas that required them to appear in court on a date certain and were further marked valid for a period of three weeks unless discharged sooner. The subpoena reduced the number of times each officer had to appear in favor of a system that required them to appear when reached on the court's calendar. Thus, the "on-call subpoena minimizes rather than increases the inconvenience to plaintiffs." Id. 175 N.J. Super. at 365.
The Appellate Division clearly stated in Reiman, supra, that "[a] person is subject to a subpoena even if his appearance is required beyond the date set forth on the face of the subpoena." Id. at 358. Reiman also noted that an on-call subpoena which was indirectly challenged on an appeal from a judgment, finding appellant guilty of contempt for failure to appear, was upheld in United States v. Snyder, 413 F.2d 288 (9th Cir.1969), cert. den. 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183 (1969). Ibid. The Reiman court further held "that a subpoena issued in New Jersey creates a continuing obligation which cannot be satisfied until the person is released from it" and "a subpoena in its traditional form does not have a specified termination date  it is valid until the person is dismissed by the court or by the person who had subpoenaed him." 175 N.J. Super. at 359, 364.
Defendant served the subpoena to secure Mabry's testimony at trial and is unwilling to dismiss his obligation to appear. This court has previously determined that immunity was not a basis to quash the subpoena served on Mabry and will not do so on the basis of its "on-call" nature. The subpoena served on *253 Mabry is valid in all aspects and will not be quashed. However, this court finds it would be unreasonable to require Mabry to travel from North Carolina to appear in New Jersey each and every time a trial date is set down regardless of whether his testimony would be taken. The subpoena will be modified to require Mabry's appearance after the trial has begun. To minimize the witness' inconvenience, defendant will be responsible for notifying Mabry, in advance, of any scheduled trial dates and further advise him that he may be called to appear within 48 hours of being called, and thus, should make himself available. Thus, the subpoena will remain in effect without undue burden to Mabry.
Defendant's counsel shall submit an order in accordance with this decision.