WARNER, J.,
dissenting.
An attorney has absolute immunity for events occurring during a judicial proceeding. However, where, as it is alleged here, an attorney makes defamatory statements which injure a person outside of those “judicial proceedings,” the attorney should be entitled only to qualified immunity. Thus, because on the motion for summary judgment there remain disputed issues of material fact as to whether the attorney made the statements and whether they were made with the intent to injure the appellant, I would reverse.
Appellant, Daniel DelMonico, is president of MYD Marine Distributor, Inc. *9 MYD is the exclusive worldwide distributor of SeaHawk marine paint under a contract with New Nautical Coatings, Inc., SeaHawk’s manufacturer.
In 2003 DelMonico sued Tony Crespo and his employer, Donovan Marine, Inc., a competitor of MYD, for defamation. What follows is a general summary of the allegations presented in DelMonico’s complaint.
In his complaint, DelMonico alleged Crespo had told at least six people that DelMonico had supplied prostitutes to an owner of a company doing business with Donovan in a successful attempt to have that company take its account away from Crespo and Donovan. Donovan retained appellee Arthur Traynor to defend it in the defamation suit. The record in this case does not reveal whether that suit is still pending.
During the course of DelMonico v. Donovan, Traynor called several people whom he identified as “witnesses.” These included DelMonico’s two ex-wives and several business contacts. When he called the ex-wives, he informed them that he was “prosecuting” DelMonico for prostitution. He also told one of them that DelMonico had been unfaithful to her during their marriage. He further told them that Del-Monico had taken one of Donovan’s customers by enticing its purchasing agent with prostitutes.
Traynor contacted a former employee of MYD and repeated to that employee Del-Monico’s alleged method of obtaining business by using prostitutes. He asked the employee to supply him with more examples of DelMonico’s use of these unethical business practices.
Not stopping with the wives and employees, Traynor contacted an employee of Bradford Marine, a substantial customer of MYD’s and consumer of the SeaHawk products of which MYD was the distributor. Traynor told the employee that Del-Monico was being prosecuted for prostitution. Later, Traynor contacted the father of the president of New Nautical. During that conversation Traynor also told him that DelMonico was being prosecuted for prostitution.
After the conversation with Bradford Marine employees, Bradford’s purchasing agent contacted New Nautical to inform them that Bradford would no longer purchase the SeaHawk paint from MYD. If forced to deal with MYD, Bradford would not buy SeaHawk products at all. In addition, other companies who purchased Sea-Hawk products through MYD contacted New Nautical and informed them that they no longer wished to deal with MYD and DelMonico, having been told that DelMoni-co was being prosecuted for prostitution and/or buying prostitutes for purchasing agents.
DelMonico sued Traynor and his law firm for defamation as well as tortious interference with the MYD contract with New Nautical due to the loss of MYD’s exclusive distributorship. Although there does not appear to be any record evidence of the amount of the loss, at the hearing on the motion for summary judgment, Del-Monico’s attorney stated that the exclusive dealership was worth between $7 and $9 million.
Traynor answered and raised the affirmative defense of absolute immunity. In his deposition, while he denied making the statements attributed to him by the foregoing individuals, he stated that he contacted the individuals in furtherance of his defense of Donovan Marine in the defamation litigation, identifying them as prospective witnesses.
The trial court granted Traynor’s motion for summary judgment based upon his affirmative defense of absolute immunity of statements made during a judicial proceed *10 ing, relying upon Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So.2d 606 (Fla.1994). Although the court questioned “whether or not developing a witness for litigation is in the course of a judicial proceeding that’s contemplated by Levin ” and whether the statements made by Traynor in this case were relevant to the inquiry in the Crespo suit, the court nevertheless felt bound by Levin.
I think the court was right to question whether an attorney’s defamatory statements to others in the course of his defense of a lawsuit fall within the absolute immunity granted in Levin. After careful reflection, I conclude that they do not. I would reverse.
Our courts have long extended absolute immunity to statements and actions taken in judicial proceedings so long as those statements are relevant to the subject of inquiry. See Levin, 639 So.2d at 608; Fridovich v. Fridovich, 598 So.2d 65 (Fla.1992); Ange v. State, 98 Fla. 538, 123 So. 916 (1929), receded from in part in Fridovich; Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907). Levin extended absolute immunity for statements and actions taken in judicial proceedings to include not only actions for defamation, slander, libel, and the like, to any other tortious behavior, so long as it has some relation to the proceeding.
This rule of privilege as applied to statements made in the course of judicial proceedings is not restricted to trials of actions, but includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer. This privilege extends to the protection of the judge, parties, counsel and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto.
Ange, 123 So. at 917. As explained in Levin,
This absolute immunity resulted from the balancing of two competing interests: the right of an individual to enjoy a reputation unimpaired by defamatory attacks versus the right of the public interest to a free and full disclosure of facts in the conduct of judicial proceedings. Fñdovich. In determining that the public interest of disclosure outweighs an individual’s right to an unimpaired reputation, courts have noted that participants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim. Id.; Sussman v. Damian, 355 So.2d 809 (Fla. 3d DCA 1977). Although the immunity afforded to defamatory statements may indeed bar recovery for bona fide injuries, the chilling effect on free testimony would seriously hamper the adversary system if absolute immunity were not provided.
639 So.2d at 608.
Despite this need for free and full disclosure, the court did not apply absolute immunity to complaints to police which instituted judicial proceedings in Fñdo-vich, instead opting to apply only a qualified privilege to such statements. In doing so, the court provided a remedy where individuals made intentionally false and malicious statements to the police. In a footnote, the court distinguished this investigatory process from formal judicial proceedings, because “the potential harm which may result from the absolute privilege is somewhat mitigated by the formal requirements such as notice and hearing, the comprehensive control exercised by *11 the trial judge whose action is reviewable on appeal, and the availability of retarding influences such as false swearing and perjury prosecutions.” Fridovich, 598 So.2d at 69 n. 5.
In Fñdovich the court referred with approval to the Restatement (Second) of Torts section 587 (1977). The Restatement defines judicial proceedings as “all proceedings in which an officer or tribunal exercises judicial functions.” Restatement (Second) of Torts § 587, cmt. f.
Other courts provide more explicit definitions of which proceedings are included. In Hearst Corp. v. Skeen, 130 S.W.3d 910, 926 (Tex.App.2004), rev’d on other grounds by 159 S.W.3d 633 (Tex.2005), the Texas court stated that the privilege applied to “communications made in the course of a judicial proceeding including any statement made by the judges, jurors, counsel, parties,' or witnesses in open court, pretrial hearings, depositions, affidavits, and any of the pleadings or other papers in the case.” Id. at 925-26 (footnote omitted). New Jersey, on the other hand, does not include depositions within the judicial proceedings protected by the privilege. See Marxe v. Marxe, 233 N.J.Super. 247, 558 A.2d 522, 524 (1989). The New Jersey courts have held that because a deposition is information gathering and “all present are not given the opportunity to be heard,” depositions do not constitute judicial proceedings, which in New Jersey are described as follows: “[Tjhere must be parties, and opportunity to be heard, and the tribunal must proceed either to a determination of facts upon evidence or of law upon proved or conceded facts. When both these elements are present, there is a judicial proceeding. [Mitchel v. Cropsey, 177 App.Div. 663, 164 N.Y.S. 336, 339 (1917)]”. Id. at 524.
After discussing the doctrine of absolute immunity as applied in federal courts, the Seventh Circuit determined that a municipality’s attorneys were not absolutely immune from suit for unlawful investigative activities conducted in defending the municipality in a lawsuit. See Auriemma v. Montgomery, 860 F.2d 273 (7th Cir.1988). The court explained that the reasons for granting attorneys absolute immunity do not always apply in the pretrial investigatory process:
[T]he primary reason for granting attorneys absolute immunity is that their unique function as advocates requires that they be able to present their client’s case at trial without intimidation or harassment. Although subject to abuses, there are sufficient safeguards in the judicial process to protect litigants from overzealous advocates. These same reasons would also warrant extending absolute immunity to actions taken by advocates within the broad confines of the civil discovery procedures available in both state and federal courts.... Conducting discovery under the rules of civil procedure falls within the unique duties of an advocate and such activities are conducted in the adversarial arena where opposing counsel and the trial court can quickly put the brakes on unethical or unlawful behavior. The same cannot be said, however, for pretrial investigations that occur outside the rules of discovery.
When an attorney in a civil suit steps beyond the rules of discovery to obtain facts in an extra-judicial investigation, he steps into a gray area where his actions start closely resembling those of a police officer or private investigator. Although there is certainly nothing wrong with an attorney conducting extra-judicial investigations, the conduct of such investigations is removed from the judicial process and is not a function that rests uniquely within the duties of *12 an advocate. More important, such investigations take place outside the adversarial arena with its attendant safeguards that provide real and immediate checks to abusive practices.
Id. at 278 (emphasis supplied) (citation omitted). The court determined that attorneys performing extra-judicial investigations would be protected by qualified immunity.
No case from the Florida Supreme Court has applied the doctrine of absolute immunity to out-of-court statements by an attorney to a witness in the course of investigation in connection with litigation. Justice Wells in his opinion, concurring in part and dissenting in part, in Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So.2d 380 (Fla.2007), raised the issue of what constitutes a “judicial proceeding,” although Echevarria involved a mortgage reinstatement letter sent by a law firm as a precondition to foreclosure.
The majority cites Stucchio v. Tincher, 726 So.2d 372 (Fla. 5th DCA 1999), which involved statements made by a witness interviewed by a lawyer representing a parent in an abuse case. Judge Harris’s opinion concluded that such statements were made in connection with a judicial proceeding. However, the opinion is of little precedential value, as Judge Griffin concurred in result only, and Judge Sharp dissented. Thus, no majority supported either written opinion. Judge Sharp concluded that the witness was protected only with a qualified privilege because the statement was made “in an investigative mode, preliminary to calling him as a witness in a judicial proceeding or deposing him under oath,” in addition to the fact that the statements were not pertinent to the judicial proceeding. Id. at 375.
If the purpose of absolute immunity is to preserve the attorney and party’s right to present their case at trial without fear of intimidation, I do not think that policy is advanced by protecting a lawyer who is defaming a party to a witness outside of a proceeding at a time when both parties are not present and do not have an opportunity to be heard. In fact, rather than enhance the truth-seeking function of trials, such conduct as alleged here may taint the entire process by influencing witnesses with false and defamatory information about the adversary. This case serves as an example. While the allegations are contested by Traynor and his firm, the attorney is accused of contacting MYD’s business partners and defaming DelMoni-co to them, resulting in the business partners terminating their dealings with MYD and DelMonico, causing substantial damage. If the attorney had made statements at a deposition, at least DelMonico’s attorney could have been present to object. As it is, the witness hears defamatory information regarding DelMonico from a member of a respected law firm. DelMonico has no protection from such damaging falsehoods when uttered essentially in secret.
When balancing the two competing interests set forth in Levin, I think extending absolute immunity to the conduct alleged in this case upsets a fine balance between the individual’s right to his reputation and a free and full disclosure of facts in a judicial proceeding. I would apply only a qualified privilege to such conduct. Just as in Fridovich, that standard would deter frivolous lawsuits as it would require the plaintiff to prove both that the statements were false and that they were made with express malice, i.e., “that the defendant’s primary motive in making the statements was the intent to injure the reputation of the plaintiff.” 598 So.2d at 69. But it would also deter participants in the investigatory process outside judicial proceedings from intentionally harming their adversary with impunity.
*13 For these reasons, I would reverse the trial court.